RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0324p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 10-5004

*v.*

KEVIN SHIELDS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-20377-1—Jon Phipps McCalla, Chief District Judge.

Decided and Filed: December 30, 2011

Before: COLE and ROGERS, Circuit Judges; SARGUS, District Judge.[*]

_____

### COUNSEL

**ON BRIEF:** Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Justin L. Bailey, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

### OPINION

_____

ROGERS, Circuit Judge. Defendant Kevin Shields challenges his 108-month sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). At issue is whether his base offense level should have been increased by four points, pursuant to U.S. Sentencing Guidelines § 2K2.1(b)(6), for possessing the weapon in connection with another felony. There was evidence that Shields had simultaneously

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

1

possessed a firearm and a small, consumption-level amount of marijuana, plus some cocaine residue. The drug possession was a felony rather than a misdemeanor only because of Shields's prior drug convictions. Although there was sufficient evidence to support the district court's finding that Shields committed a felony under Tennessee law by possessing the drugs, the Government did not sufficiently demonstrate that Shields's possession of a firearm facilitated, or had the potential to facilitate, his felony drug possession. Thus, his sentence was procedurally unreasonable.

Kevin Shields was arrested on July 15, 2008, after officers found him in possession of a nine-millimeter handgun. On November 18, 2008, a federal grand jury charged Shields with violating 18 U.S.C. § 922(g), and he pleaded guilty to being a felon in possession of a firearm on August 7, 2009. A federal probation officer compiled a presentence investigation report (PSR), assigning Shields a total offense level of twenty five and a criminal history category of VI, and recommending that he be sentenced to between 110 and 120 months' imprisonment. Shields filed an objection to the PSR's use of a four-level enhancement to his base offense level for possession of a firearm in connection with another felony offense pursuant to U.S. Sentencing Guidelines § 2K2.1(b)(6), arguing that he did not possess any drugs when he was arrested for being a felon in possession of a firearm. The probation officer rejected this objection, explaining that the enhancement was warranted because officers found marijuana and cocaine near where Shields was sitting right before he was arrested.

The district court held a hearing to determine Shields's sentence on December 14, 2009. The only issue in dispute was the application of the four-level enhancement. The Government introduced the testimony of two Memphis police officers involved in Shields's apprehension. Lieutenant Paul Wright, Jr., testified that he was patrolling an area of the city in a plain vehicle when he saw Shields get out of a vehicle and stick a handgun in his front waistband. Lieutenant Wright called for backup, and two officers, Billy Jackson and Derrick Wilkes, came to the scene in a marked vehicle and approached Shields together. Officer Jackson testified that as he and Officer Wilkes approached Shields, who was at that point in time sitting on the porch of an

apartment complex, Shields pulled the handgun out of his waistband and threw it into the grass. Shields was quickly detained and Officer Jackson recovered the handgun. As Officer Wilkes was walking Shields to the patrol car, Shields stated that he needed his wallet and told the officers that it was on the porch. Officer Jackson went to retrieve the wallet from the porch and found what appeared to be marijuana and cocaine in two small plastic baggies sitting on top of the wallet. It was later confirmed that one baggy contained 4.2 grams of marijuana and the other contained cocaine residue. Officer Jackson acknowledged that there was another man, Eugene Moore, on the porch with Shields when Shields was apprehended. Officer Wilkes, whose testimony was presented as part of Shields's case, acknowledged that Shields never admitted that the drugs were his, though Shields did admit that the gun was his.

The Government also presented the testimony of Moore, who was sitting with Shields on the porch when Shields was apprehended by Memphis police. Moore testified that Shields came over and joined Moore on the porch of the complex, where Moore's mother lived, on the date in question, and that Shields brought with him some liquor, a 24-ounce beer, and a small baggy of marijuana. Although Moore had smoked marijuana on occasion in the past, he insisted that the drugs police discovered were not his and that he and Shields were the only two people "hanging out" on the porch at that time.

Shields testified on his own behalf at his sentencing hearing. Shields claimed that shortly after he came up to the porch to visit with Moore, Moore told Shields that Moore was going to smoke some marijuana and asked Shields if he had any rolling papers. Shields testified that he did have rolling papers and that he offered them to Moore and asked Moore if he could smoke the marijuana as well, to which Moore replied that he could. Shields admitted that he has a problem with marijuana, but insisted that the drugs police found on the porch were Moore's, not his. In response to the Government's questioning about why he was carrying a gun, Shields explained that he carried it for his protection.

Considering the evidence presented by both sides, the district court found that the Government had met its burden of showing that the enhancement should apply. The court explained:

> This is not one of those cases where [the Government] presented overwhelming evidence on it, they just presented a lot of evidence, and it seems to accumulate in such a way as to lead to the conclusion that because of the proximity, because of the timing, because of the other evidence which indicates that you did have a marijuana problem that you would have carried some marijuana with you.

Thus, the court accepted the PSR's guidelines calculations, which provided for a recommended sentencing range of 110 to 120 months.[1] The district court then went through the 18 U.S.C. § 3553(a) factors, analyzing the offense conduct, Shields's history and characteristics, the need for justice, the need for deterrence, and the need to protect the public and to rehabilitate Shields. Ultimately, the district court concluded that 108 months' imprisonment with a three-year period of supervised release would be the appropriate sentence. Shields now appeals that determination.

The district court's application of the four-level enhancement to Shields's base offense level pursuant to U.S. Sentencing Guidelines § 2K2.1(b)(6) was unwarranted in this case; thus, his sentence was not procedurally reasonable. A sentence is procedurally unreasonable if a district court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range," *Gall v. United States*, 552 U.S. 38, 51 (2007), and Shields argues that this occurred in his case because the district court mistakenly applied § 2K2.1(b)(6). We review a sentencing court's factual findings for clear error, and we must give due deference to a district court's application of the sentencing guidelines to the facts. *United States v. Taylor*, 648 F.3d 417, 430-31 (6th Cir. 2011); *United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001). In the district court, "[t]he government bears the burden of establishing the factors supporting [a sentencing] enhancement by a preponderance of the evidence." *United States v. Gibson*, 985 F.2d 860, 866 (6th Cir.

---

[1]The sentencing range for a base offense level of twenty-five and criminal history category of VI without regard to the statutory maximum is 110 to 137 months, but the statutory maximum for a § 922(g) violation like this is ten years. *See* 18 U.S.C. § 924(a)(2).

1993).  Section 2K2.1(b)(6) provides for a four-level increase to the base offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense."  Essentially, Shields claims both that he did not commit another felony offense, because he did not possess any drugs, and that even if he did possess the drugs, the Government did not establish a sufficient nexus between the firearm possession and the drug-possession felony.  While the first argument lacks merit, the second warrants vacating Shields's sentence.

The district court did not clearly err in finding that Shields committed another felony offense.  The commentary to § 2K2.1 states that "'[a]nother felony offense,' for purposes of subsection (b)(6), means any Federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  App. Notes, cmt. 14(C).  Tennessee law forbids knowingly possessing a controlled substance, and makes such possession a felony when the person has two or more prior drug convictions.  Tenn. Code Ann. § 39-17-418(a), (e).  The district court found that Shields possessed the marijuana and cocaine discovered by officers on the porch where he was sitting, which would constitute a felony because of his prior Tennessee drug convictions.  The Government presented enough evidence to support this finding.  Officer Jackson found the baggies with small amounts of marijuana and cocaine sitting on top of Shields's wallet on the porch.  Moore testified that Shields had marijuana on him when he came to the porch to visit with Moore.  Although Shields disputes Moore's testimony, the district court considered Moore to be a "pretty credible witness," and there is no reason for us to disregard that finding.  Finally, Shields admitted not only that he regularly smoked marijuana, but also that he was planning on smoking it when officers approached him on the date in question.  These facts permitted the district court's finding by a preponderance of the evidence that Shields had possession, whether actual or constructive, of the drugs, and thus that Shields committed another felony offense.

Despite the existence of another felony offense, application of the sentencing enhancement was not appropriate because there was not a sufficient nexus between the firearm and the drugs recovered during this incident. The commentary to § 2K2.1 provides that a firearm is possessed "in connection with" another felony "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." App. Notes, cmt. 14(A). One way of demonstrating this nexus is through the fortress theory, "which applies where a defendant has used a firearm to protect the drugs, facilitate a drug transaction, or embolden himself while participating in felonious conduct." *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006) (citing *Ennenga*, 263 F.3d at 503-04). Although the fortress theory can be applicable in a case involving mere drug possession even without evidence of drug trafficking, the firearm Shields possessed did not "embolden" him to possess or use drugs.

This conclusion is supported by our decision in *United States v. McKenzie*, 410 F. App'x 943 (6th Cir. 2011). The facts in that case are materially indistinguishable from the facts in Shields's case. In *McKenzie*, the defendant was charged with being a felon in possession of a firearm after officers pulled him over and found a pistol hidden between the driver's seat and the center console of the car he was driving. 410 F. App'x at 944. Like Shields, the defendant claimed to be carrying the gun to protect himself. *Id.* The district court applied the § 2K2.1(b)(6) enhancement in sentencing the defendant because a bag containing 1.1 grams of marijuana was also found on the arm rest of the driver-side door. *Id.* We vacated the sentence.

We noted three main reasons that "the government ha[d] not proven by a preponderance of the evidence that [the defendant's] firearm had the potential to facilitate his marijuana possession" as required to apply the § 2K2.1(b)(6) enhancement. *Id.* at 946-47. First, we explained that "there was no evidence that [the defendant] was engaged in drug trafficking." *Id.* at 946. The same is true in Shields's case, as the Government has never asserted that Shields was trafficking in marijuana or cocaine. Second, we noted that "although the 'fortress theory' cases indicate that, under some circumstances, a firearm can facilitate mere drug possession, [*McKenzie*] involved a very

small amount of marijuana that was clearly meant for [the defendant's] personal use, not a valuable quantity like those involved in [other cases]." *Id.* In previous cases involving application of the fortress theory, the amount of drugs possessed by the defendants was of a much larger quantity. *See, e.g.*, *United States v. Richardson*, 510 F.3d 622, 624, 627 (6th Cir. 2007) (involving the discovery of nearly 120 grams of marijuana, digital scales, and a gun in a hotel room); *United States v. Hardin*, 248 F.3d 489, 491, 500 (6th Cir. 2001) (involving a bag of marijuana and fifty-four grams of cocaine found in close proximity to a gun); *Ennenga*, 263 F.3d at 503-04 (involving the recovery of a "sizeable stash of marijuana plants" and various firearms in defendant's locked and alarm-rigged basement). Like the defendant in *McKenzie*, Shields possessed only a small amount of marijuana—testimony indicated that he possessed only around ten dollars' worth of the substance—and a baggy containing cocaine residue. Finally, we stated in *McKenzie* that "although [the defendant] told the police he was carrying the gun for protection, the facts suggest that he feared for his *life*, not that someone would steal a baggie of pot from his car." 410 F. App'x at 947. The same can be said of Shields, who also told officers that he had a gun for personal protection.

Further, the Sentencing Commission has clarified that § 2K2.1(b)(6) applies "in the case of a drug *trafficking* offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." App. Notes, cmt. 14(B) (emphasis added). This implies that "while close proximity between a firearm and drugs will suffice to justify the enhancement when an offender is engaged in drug trafficking, in other cases the enhancement applies only if the government can establish that the firearm actually or potentially *facilitated* that offense." *McKenzie*, 410 F. App'x at 945. Thus, proximity that is merely coincidental is not enough for application of § 2K2.1(b)(6) when a defendant merely possessed drugs. *See also United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009) (citing *Ennenga*, 263 F.3d at 503). To allow otherwise "would render the distinction in the Guidelines commentary between drug trafficking and other felonies meaningless." *McKenzie*, 410 F. App'x at 947.

We recognize that in another unpublished opinion of this court, on facts similar to those of *McKenzie* and this case, we upheld the enhancement. *United States v. Berkey*, 406 F. App'x 938 (6th Cir. 2011). The reasoning of *McKenzie*, however, is on balance more persuasive. In *Berkey*, we asserted that the facts did not establish mere proximity, but also that the defendant "took the gun and drugs out in public and used the drugs in public while keeping the gun nearby." *Id.* at 940. We reasoned that this tipped the balance in favor of holding "that [the defendant] possessed the gun 'in connection with' possessing the marijuana." *Id.* However, this "in public" factor appears to draw a line that is not particularly related to the existence of a connection with another felony. Possessing consumption-level amounts of drugs in public is not much more likely to require a firearm for protection than possessing such an amount in private.

More relevant to the usefulness of the gun when possessing drugs is the quantity of drugs possessed. Firearms "are 'tools of the trade' in drug transactions," *Hardin*, 248 F.3d at 499, and it is easier to see how a firearm facilitates drug trafficking transactions, than it is to see how a firearm facilitates the mere possession of controlled substances. In a drug transaction, the offender must hold onto the drugs long enough to transfer them to another person, and make sure he gets money in return. Thus, a firearm can embolden the offender to carry a large amount of drugs, to show up at a location where the parties on the other side of the transaction are armed, and to ensure that both sides of the transaction are completed, i.e., that both the money and the drugs change hands.

Moreover, carrying objects of great value is naturally facilitated by the security of being armed—whether the objects are intended for sale or not. *See Ennenga*, 263 F.3d at 504 (noting that even without evidence of distribution, the desire to protect a "large and valuable stash" can be compelling). The same cannot be said for carrying objects of little value, regardless of whether they are carried in public or indoors.

Because the street value of the drugs Shields possessed was negligible, application of the sentencing enhancement was not appropriate in this case. We put forth no bright-line rule for what amount of controlled substances would permit application of § 2K2.1(b)(6) with a drug possession offense, but simply reject its

application—without further evidence of facilitation—with the small amount of drugs Shields possessed here. A repeat possessor of a small amount of drugs would not feel the need to have a gun to protect that amount of drugs any more than a first-time misdemeanor possessor of such a small amount, and the firearm thus was not useful in Shields's case. The Fifth Circuit in *United States v. Jeffries*, 587 F.3d 690, 695 (5th Cir. 2009), similarly held that where a defendant possessed a firearm and a single rock of crack cocaine in the same car, "[t]he facts . . . are too sparse to support the conclusion that [his] possession of a gun 'emboldened' him to engage in the crime of cocaine possession." The fortress theory should not apply in this situation, unless the Government can produce relevant evidence, other than mere proximity, that the gun was actually used or intended to be used to protect the drugs. It does not appear that Shields was in the business of drug trafficking or that he intended to possess the gun to ward off persons considering stealing the contraband he possessed. The § 2K2.1(b)(6) sentencing enhancement accordingly did not apply in Shields's case, and his Guidelines range was therefore not properly calculated. It follows that his sentence was not procedurally reasonable.

Because Shields's sentence must be vacated on a procedural reasonableness ground, we need not address the substantive reasonableness of the sentence, i.e., whether the district court properly considered Shields's request for a downward variance. We vacate Shields's sentence and remand for resentencing consistent with this opinion.