**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0060n.06

**No. 11-3582**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
***Jan 14, 2013***
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| TERRENCE SHANNON, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  SILER and KETHLEDGE, Circuit Judges; MURPHY, District Court Judge.[*]

**SILER**, Circuit Judge.  Defendant Terrence Shannon pled guilty to one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g).  The district court sentenced Shannon to 52 months of imprisonment and ordered that he register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901, for his earlier juvenile offender adjudication for gross sexual imposition, in violation of Ohio Rev. Code § 2907.05.

On appeal, Shannon raises three issues regarding his sentencing.  First, whether the district court erred in applying a four-level enhancement for possession of a firearm in connection with another felony offense pursuant to USSG § 2K2.1(b)(6).  Second, whether the district court properly ordered Shannon to register as a sex offender under SORNA as a condition of supervised release.

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

No. 11-3582
United States v. Shannon

Third, whether the SORNA registration requirement violates the Ex Post Facto Clause of the U.S. Constitution. *See* U.S. Const. art. I, § 9, cl. 3. We **AFFIRM**.

I.

Shannon was arrested in 2010, after officers found him in possession of a loaded handgun and 2.2 grams of crack cocaine. He pled guilty to the firearm charge. His presentence investigation report ("PSR") assigned Shannon a total offense level of twenty-one and a criminal history category of IV, and recommended an imprisonment range of 57 to 71 months. Shannon objected to a four-level enhancement to his base level offense for possession of a firearm in connection with another felony, arguing that he carried the firearm for protection and not for criminal activity. He also objected to the probation officer's recommendation that he register as a sex offender under SORNA, arguing that he should not be required to comply because as a juvenile delinquent he was not convicted of a crime.

At sentencing, the district court imposed a four-level enhancement for use of a firearm in connection with another felony offense under USSG § 2K2.1(b)(6). The district court found that the United States met its burden of showing that the enhancement should apply. The district court granted Shannon's objection with respect to state law sex offender registration but denied the objection as it applies to federal registration, requiring that he register in Ohio pursuant to Section 113 of the Adam Walsh Child Protection and Safety Act of 2006.

The district court sentenced Shannon to concurrent terms of 52 months, departing downward from the guidelines range, and required him to register as a sex offender.

II.

A four-level enhancement to the defendant's base offense level applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." USSG § 2K2.1. "Possession of firearms that is merely coincidental to the underlying felony offense is insufficient" to warrant an application of the enhancement. *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011). We review the sentencing court's factual findings for clear error and accord "due deference" to the sentencing court's determination that the firearm was used or possessed "in connection with" the other felony. *Id.* at 430-31.

Shannon argues that the government failed to satisfy its burden and offered no proof that the firearm was possessed in connection with the drugs or another felony. When considering whether there is a connection between a gun and a drug offense, we consider the proximity of the gun to the drugs and whether the defendant has an innocent explanation for the firearm. *Id*. at 432. However, an "alternative explanation for the presence of a gun does not preclude that gun from *also* being used to facilitate a drug offense." *United States v. Oglesby*, 210 F. App'x 503, 507 (6th Cir. 2007). The close proximity of the firearm and the drugs, while not dispositive, is itself evidence of a nexus between the two. *See United States v. Davis*, 372 F. App'x 628, 629 (6th Cir. 2010) (noting that "we have stopped short of finding close proximity dispositive" and instead have held proximity is "certainly indicative of a connection between the guns and the drugs").

The district court never explicitly stated what specific drug offense constituted the independent felony connected to the firearm, but it noted that Shannon had no visible means of support, which suggests that Shannon was involved in drug trafficking as opposed to merely carrying the drugs for personal use. This inference is further supported by Shannon's statement to the

probation officer that he did not use crack cocaine–with the exception of one occasion without his prior knowledge–and that he did not enjoy the experience. This evidence distinguishes *United States v. Shields*, a case on which Shannon relies, where this court held that the § 2K2.1(b)(6) enhancement did not apply to a defendant who was caught carrying a gun with a small amount of marijuana, in part because the government presented no evidence that the defendant was engaged in drug trafficking. 664 F.3d 1040, 1045 (6th Cir. 2011). The district court properly applied the four-level enhancement.

III.

Shannon argues that the district court abused its discretion when it ordered, as a special condition of supervised release, that he comply with SORNA's registration requirement. Specifically, he contends that the district court must give a rationale in open court for mandating special conditions of supervised release, which the court did not do here. But Shannon is mistaken about the nature of the condition at issue. A requirement to register under SORNA is a mandatory (or so-called "explicit") condition of supervised release, rather than a special condition of it. *See* 18 U.S.C. § 3583(d); *accord United States v. Ossa-Gallegos*, 491 F.3d 537, 540 (6th Cir. 2007) (en banc). Thus, if Shannon met SORNA's registration requirements, the district court was statutorily required to impose registration as a condition of supervised release.

Additionally, Shannon challenges the procedure by which the district court imposed the condition of supervised release, arguing that the district court did not clearly determine at the sentencing hearing whether his previous conduct was "comparable to or more severe than aggravated sexual abuse or an attempt or conspiracy to commit such an offense" as defined by the SORNA

provision which requires registration by juveniles age 14 or older who are adjudicated delinquent. 42 U.S.C. § 16911(1), (8). Aggravated sexual abuse is defined, in part, as knowingly causing, or attempting to cause, another person to engage in a sexual act by using force against that person or threatening death, serious bodily harm, or kidnapping. 18 U.S.C. § 2241(a). Shannon was adjudicated delinquent for gross sexual imposition, which is defined under Ohio law as the purposeful compulsion of another person to submit to sexual contact by force or threat of force. Ohio Rev. Code § 2907.05(A)(1).

We review de novo a district court's imposition of a mandatory condition of supervised release. *United States v. Marlow*, 278 F.3d 581, 583 (6th Cir. 2002). Shannon was at least fourteen years of age at the time of the juvenile offense. The district court stated that the incident "could have turned into a rape situation," that it "could have been much uglier than the ultimate disposition of the case," and that the GSI "sounds like it could have turned pretty violent." Thus, even though the district court did not expressly state that this offense was comparable to aggravated sexual abuse, its comments amounted to such a finding. Although the court could have stated more clearly that the comparability requirement was met, the record here shows that it was. The district court, therefore, correctly decided that Shannon must comply with SORNA.

IV.

Shannon argues that the district court's imposition of the SORNA registration requirement violates the Ex Post Facto Clause of the U.S. Constitution. However, the Ex Post Facto Clause does not forbid adoption of civil, regulatory measures with retroactive operation. *See Smith v. Doe*, 538 U.S. 84, 92 (2003) (finding Alaska's sex-offender registration statute not punitive, but civil in nature,

and not in violation of the Ex Post Facto Clause). A statute civil in nature cannot impose punishment. *Kan. v. Hendricks*, 521 U.S. 346, 361 (1997); *see Doe v. Bredesen*, 507 F.3d 998, 1003 (6th Cir. 2007).

In *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012), we held that SORNA's registration requirements do not violate the Ex Post Facto Clause, as the statute does not increase the punishment for the past conviction; rather, it provides for a conviction for failing to register.

At issue in this case is whether SORNA's juvenile registration provision is nevertheless punitive because, as Shannon argues, its effect is punitive. *See Doe*, 538 U.S. at 92-93. The juvenile registration provision states:

> The term "convicted" or a variant thereof, used with respect to a sex offense, includes adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse (as described in section 2241 of title 18, United States Code [18 USCS § 2241]), or was an attempt or conspiracy to commit such an offense.

14 U.S.C. § 16911(8). In evaluating the punitive effect of SORNA's juvenile registration provision, we consider only the "clearest proof," *Doe*, 538 U.S. at 92, and the factors spelled out in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), in relation to the statute on its face. *Seling v. Young*, 531 U.S. 250, 262 (2001). In *Doe*, the Supreme Court applied the *Mendoza-Martinez* factors and set forth the standard for evaluating whether a sex offender registration program violates the Ex Post Facto Clause. *Doe,* 538 U.S. at 97-105. Other circuits have applied the *Doe* analysis in deciding

whether SORNA registration for a juvenile sex offense violates the Ex Post Facto Clause.[2]
Likewise, we consider "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Doe*, 538 U.S. at 92, 97.

The *Doe* Court stated that "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." *Id*. at 98. Additionally, there is "no remaining requirement under SORNA that jurisdictions publicly disclose information about sex offenders whose predicate sex offense 'convictions' are juvenile delinquency adjudications." *See* Office of the Attorney Gen., U.S. Dep't of Justice, Supplemental Guidelines for Sex Offender Registration and Notification, 76 Fed. Reg. 1630, 1632 (2011). Thus, the first *Doe* guidepost leads us to conclude that SORNA is not "so punitive either in purpose or effect as to negate" Congress's intention to make it a civil regulatory statute, and it should not be equated with our nation's historical and traditional punishments. *Doe*, 538 U.S. at 92.

---

[2] *See United States v. Elkins*, 683 F.3d 1039 (9th Cir. 2012) (concluded that applying SORNA to Elkins based on his state conviction as a juvenile sex offender is not punitive); *United States v. Juvenile Male*, 670 F.3d 999, 1008 (9th Cir. 2012) ("*Juvenile Male II*") (finding that because SORNA was the later-enacted, more specific provision, and because Congress was aware of the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § 031 *et seq*., "the district court properly applied SORNA's registration requirements to the juvenile defendants in these cases" and not all applications of SORNA to individuals based on juvenile sex offender determinations are sufficiently punitive to violate the Ex Post Facto Clause); *United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011) (holding that the SORNA registration requirement is not punitive in effect such that it violates the Ex Post Facto Clause when the defendant, convicted of a post-SORNA crime that is not a sex offense, is required to register as a condition of supervised release because of a "pre-SORNA, Alabama Youthful Offender conviction that is a sex offense.").

Next, we consider whether SORNA imposes an "affirmative disability or restraint" on those it regulates. *Id*. at 100. Shannon is not physically restrained by the SORNA registration requirement, nor is he likely to be more than inconvenienced by its conditions. Thus, SORNA does not rise to the level of imposition of affirmative disability or restraint upon Shannon.

Third, we consider whether SORNA promotes the traditional aims of punishment, retribution and deterrence. *Id*. at 102. Like the Alaska statute in *Doe*, SORNA's regulatory regime is reasonably related to the danger of recidivism posed by sex offenders. SORNA allows the public and law enforcement to determine the whereabouts of convicted sex offenders, but it does not directly restrict their mobility, employment, or how they spend their time. We have determined that SORNA in not punitive in nature. *Felts*, 674 F.3d at 606. Therefore, we find that SORNA does not promote the traditional aims of punishment.

The question of whether SORNA has a rational relationship to a nonpunitive purpose is the "most significant" factor in determining whether a sex offender registration system is nonpunitive. *Doe*, 538 U.S. at 102. The Court in *Doe* recognized that the Alaska sex offender registry had the legitimate nonpunitive purpose of promoting public safety "by alerting the public to the risk of sex offenders in their communit[y]." *Id*. at 103 (quotation marks omitted). The same is true of SORNA.

Finally, we determine whether SORNA is excessive with respect to its nonpunitive purpose. The excessiveness question is not to determine "whether the legislature made the best choice possible to address the problem it seeks to remedy," but rather "whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id*. at 105. With respect to the Tennessee state sex offender registry, we found the regulatory scheme and its reporting requirements not to be

excessive in *Doe v. Bredesen*, 507 F.3d at 1006. SORNA's regulatory purpose and the means used to achieve it is not materially different from that of the Alaska statute in *Doe* or the Tennessee state registry. Unacknowledged by Shannon, the Guidelines issued by the Attorney General allow for possible exemption from the dissemination of Shannon's information. Thus, the degree to which his information may be publicized is not at the level of "punishment" that Shannon would have this court believe SORNA requires. Further, as acknowledged by the Eleventh Circuit in *W.B.H.*, a lower rate of recidivism among juveniles does not equate to no recidivism, and even if adults have a higher recidivism rate, that does not mean that registration requirements are excessive. *W.B.H.*, 664 F.3d at 860. When considered with the intended safety benefits, the SORNA regulatory scheme is not excessive.

In creating SORNA, Congress intended not to impose an additional punishment for past sex offenses but instead to establish a civil regulatory scheme. *Doe* requires the "clearest proof" that SORNA is so punitive in effect, as applied to juvenile delinquents, as to negate that intention. Because Shannon has not offered the clearest proof to contradict Congress's intention, we reject Shannon's ex post facto challenge of SORNA's application to him.

**AFFIRMED.**