**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0340n.06
Case No. 19-1824

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE WESTERN DISTRICT OF</td></tr>
<tr><td>JERRY NEAL,</td><td>)</td><td>MICHIGAN</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
Jun 10, 2020
DEBORAH S. HUNT, Clerk

BEFORE: MOORE, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. When police pulled over Jerry Neal, they found a loaded Glock pistol on the driver's side floorboards and drugs on his person and in his car. Neal pleaded guilty to one count of being a felon in possession and the court enhanced his sentence because of the weapon's potential to facilitate his possession with intent to distribute narcotics. *See* U.S.S.G. § 2K2.1(b)(6)(B). Neal challenges that enhancement. Because the district court did not clearly err in applying it, we affirm.

Shortly after midnight on August 12, 2018, police pulled over a red Chevy Tahoe for speeding and for defective equipment. Approaching the vehicle, officers smelled marijuana. The driver, Jerry Neal, admitted to smoking marijuana but said he no longer had any drugs with him.

When the officers asked Neal to step out of the vehicle, he placed his hand on the gear shifter in an apparent effort to put the vehicle into drive. One of the officers reached through the driver's side window and tried to grab the gear shifter. Things went downhill from there. Neal hit

the accelerator. The officer clung to the vehicle and continued attempting to shift the car back into park. Neal lost control and crashed the vehicle into a tree. Neal took off on foot, and the officers pursued him.

Catching Neal proved difficult. At one point the officers got him to the ground, but they could not subdue him. Both shot him with their tasers. Neal pulled out the taser probes, got to his feet, and took off running again. During the pursuit Neal ducked between two homes, jumped a fence, and landed on a pile of logs. The officers caught up to him. They put Neal in handcuffs but not before they stirred up a beehive: Everyone was stung several times.

Police searched Neal and found 1.88 grams of suspected cocaine base and 2.95 grams of suspected marijuana on his person. In his car, they found 1.2 grams of suspected marijuana, three cellphones, and a loaded Glock 30 .45 caliber pistol with 8 rounds of ammunition. Laboratory testing of the suspected narcotics confirmed the substances "to be 1.5 grams of cocaine and 0.6 grams of marijuana." PSR at 5. Neal later claimed the Glock did not belong to him and offered to identify the weapon's owner if the government would "talk turkey" with him. *Id.* at 6.

Neal pleaded guilty to one count of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). After taking stock of Neal's criminal history, imposing a six-level enhancement for assaulting an officer, U.S.S.G. § 3A1.2(c)(1), and adding a four-level enhancement for possessing a firearm in connection with possession with intent to distribute cocaine base and marijuana, *id.* § 2K2.1(b)(6)(B), the presentence report identified a guidelines range of 120 to 150 months. The statutory range capped out at 120 months. Neal objected only to the four-level firearm-possession enhancement.

At the sentencing hearing, the government called ATF Special Agent Timothy Hunt, who had worked on a DEA task force and handled "a number of cases involving drug trafficking."

2

R. 36 at 10. He testified that Neal's conduct suggested "[d]istribution of the crack cocaine," not merely possession. *Id.* at 16. He noted that the quantity of drugs in Neal's possession exceeded the amount typical of recreational users because users do not typically "stock up" on crack cocaine but buy smaller increments of 0.1 to 0.5 grams. *Id.* at 14–15.

Agent Hunt also testified that he had examined one of the cellphones Neal had in his possession at the time of arrest and described a text conversation he reviewed between Neal and an unidentified drug buyer in the days preceding the arrest. At around 1:30 AM on August 9, Neal received a text from a phone number saying "got a play for 50," which Agent Hunt testified meant the sender wanted to buy $50 of drugs. *Id.* at 10. Just minutes later, Neal responded "omw," meaning "on my way." *Id.* at 11. At about 3:00 AM the next day, the same number texted Neal "[n]eed a half g," which Agent Hunt indicated meant the sender needed half a gram of drugs. *Id.* at 12. The same number followed up the next day, August 11, asking "[w]hat up can u take [care] of that yet[?]" *Id.* And later that same day, the number offered this instruction: "Pull up out back." *Id.* Within eight minutes of that text, a call took place between Neal and the message sender. *Id.* at 13–14. Seven minutes later, another call took place. And at 4:40 AM the next day, just hours after Neal's arrest, the same number texted Neal the single word "Yo." *Id.* at 13. All of this, said Agent Hunt, looked like Neal coordinating the sale of drugs. The court applied the § 2K2.1(b)(6)(B) enhancement on this basis, and sentenced Neal to 120 months.

Neal challenges the enhancement on appeal. We review the district court's factfinding for clear error, and "accord due deference to the district court's determination" as to the enhancement's applicability. *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019).

Section 2K2.1(b)(6)(B) authorizes a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense." The

enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1 cmt. n.14(B). While the nexus between the gun and drugs must rise above "unfortunate coincidence," *United States v. Goodman*, 519 F.3d 310, 323 (6th Cir. 2008), a court may apply the enhancement based on close physical proximity and corroborating evidence that the weapon's owner conceived of the gun as "protect[ing] the drugs or otherwise facilitat[ing] a drug transaction." *United States v. Jackson*, 877 F.3d 231, 237 (6th Cir. 2017) (quotation omitted).

The court did not clearly err in finding that Neal intended to distribute drugs. Casual users of cocaine do not customarily walk around with 1.5 grams on them, as Agent Hunt confirmed. Neal had multiple cellphones (three) in his car, a characteristic common to drug dealing and not common in everyday life. At the time of arrest, one of the cellphones was open to a text conversation in which Neal appeared to be coordinating drug sales with an unidentified buyer. The conversation stretched out over several days. It referenced the quantity of drugs sought and the logistics of delivery. The exchange preceded Neal's arrest and continued shortly after it.

The court also did not clearly err in finding that Neal possessed the Glock "in connection" with this drug dealing. U.S.S.G. § 2K2.1(b)(6)(B). Neal cannot contest the police found the gun in "close proximity" to drugs. *Id.* § 2K2.1 cmt. n.14(B). When the police first approached the vehicle, he had the drugs on him and the gun at his feet. We have previously affirmed § 2K2.1(b)(6)(B) enhancements based on weapons with a more attenuated nexus to drug dealing—including for defendants who possessed a weapon in one room and drugs in another. *See United States v. Taylor*, 648 F.3d 417, 433 (6th Cir. 2011); *United States v. Ennenga*, 263 F.3d 499, 503–04 (6th Cir. 2001). Neal's "ready access" to the gun makes this case easier. *United States v. Angel*,

576 F.3d 318, 322 (6th Cir. 2009). Neal did not offer an "innocent explanation" for his possession of the Glock or the fact that it was loaded. *Taylor*, 648 F.3d at 432.

Neal discounts the text messages because, while the sender wanted to *buy* drugs, Neal did not say he would sell them through his "generic" responses that "did not mention drugs." Appellant Br. 10. But the context of the messages and circumstances suggest otherwise. Right after the sender asked to buy $50 worth of drugs, Neal responded that he was on his way. Just minutes after the unnamed buyer gave Neal instructions where to park his car (in turn, just hours after the buyer requested half a gram of cocaine), moreover, the two spoke on the phone. We cannot fault the court for connecting these circumstantial dots and others in finding that Neal sought to distribute drugs—and more to the point cannot find any clear error.

Neal adds that his prior conviction for drug trafficking is dated (2000), occurred when he was a young man (17), and carried a light sentence (6 months). True points all. But none of these observations shows that the court made a reversible mistake. It did not apply the § 2K2.1(b)(6)(B) enhancement based on that criminal history. In offering its rationale for the enhancement, the court pointed only to the contemporaneous evidence of Neal's drug dealing: Agent Hunt's testimony about the quantity of drugs and about the text messages and calls to one of Neal's three cellphones. The court did not mention Neal's distribution conviction then.

Neal claims that the enhancement should not apply because he had a small quantity of drugs, making it unlikely he would need a Glock for self-defense. To be sure, we often consider the amount of drugs in a defendant's possession as evidence that the defendant did—or did not— possess the firearm in connection to a drug trafficking offense. *See, e.g.*, *United States v. Seymour*, 739 F.3d 923, 930 (6th Cir. 2014) (reversing application of the enhancement where the "[d]efendant had only a small amount of drugs in his possession, and . . . nothing in the record

show[ed] that [the] [d]efendant was engaged in any sort of narcotics trafficking"); *Ennenga*, 263 F.3d at 504 (upholding application of the enhancement and noting that "[w]hen one is in possession of a large and valuable stash of drugs, the desire to protect these illicit substances can be compelling"). But the enhancement does not specify a minimum quantity of drugs. If a defendant has plenty of drugs, that fact no doubt provides evidence he planned to sell some of them to others. But even if the defendant possesses a smaller quantity, the enhancement may apply if other evidence indicates his intent to sell some of it to others. Neal's text message conversation and phone calls with the unidentified buyer provide that evidence. By Agent Hunt's reckoning at any rate, the amount of cocaine on Neal was more than one would reasonably expect from a recreational user. The court did not clearly err in crediting that testimony.

The one case Neal offers for support, *United States v. Shields*, 664 F.3d 1040 (6th Cir. 2011), does not look like this one. The defendant possessed about $10 worth of marijuana and no other "evidence [indicated] that the defendant was engaged in drug trafficking." *Id.* at 1045 (quotation omitted). And the defendant testified that he feared for his life for reasons unrelated to the drugs and testified that he carried the weapon for personal protection. *Id.* Neal did not introduce comparable evidence. To this day, he has yet to offer an explanation—innocent or otherwise—for why he had a Glock on the floorboards of his car.

Neal complains that the court did not adequately explain its rationale for applying the enhancement. As to Neal's intent to distribute, the district court found that "the agent's testimony" about the quantity of Neal's drugs "not being an amount consistent with simple possession," in combination with the "phone call message or the text messages which were part of the agent's testimony" furnished an ample factual basis to support the enhancement. R. 36 at 27–28. And as to the nexus requirement, the court took stock of the "the totality of the record," which offered

overwhelming (and uncontradicted) evidence that Neal kept his loaded Glock right next to his feet while transporting drugs he evidently intended to sell. *Id.* at 28. An enhancement this "conceptually straightforward" does not require much in the way of explanation. *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009).

We affirm.