NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0587n.06

No. 21-1029

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Dec 20, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| SHONDALE GREGORY PRITCHETT, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MOORE, CLAY, and READLER, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** For criminal defendants who traffic drugs and get caught, the use or possession of a firearm "in connection with" this trade threatens a hefty sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Shondale Gregory Pritchett challenges the district court's imposition of a four-level sentencing enhancement under this section of the guidelines, arguing that the link between his trafficking of ecstasy and possession of a handgun found in his home is too tenuous. That connection was sufficiently close for us to **AFFIRM**.

## I. BACKGROUND

Based on a tip from a confidential informant, law enforcement suspected that Pritchett had been travelling to Chicago, Illinois to buy heroin and fentanyl to resell in Kalamazoo, Michigan where he resided. R. 42 (PSR ¶ 15) (Page ID #174). Examination of Pritchett's trash uncovered

two burnt pieces of tin foil with traces of methamphetamine, leading officers to secure a warrant and search Pritchett's home on November 19, 2019. *Id*. ¶¶ 16–17 (Page ID #174).

During the search of the bedroom, officers found a box holding forty-three rounds of 9mm ammunition. *Id*. ¶ 18 (Page ID #175). Also in that room, officers discovered a purse which contained a single ecstasy tablet comprised of .58 grams of 3, 4-methylenedioxymethamphetamine (MDMA).[1] *Id.* In the bedroom's closet, officers found two jackets belonging to Pritchett that were of interest, one red and one white. *Id*.; R. 30 (Plea Agreement ¶ 6) (Page ID #113). One pocket of the red jacket held a digital scale, while the other held a sandwich baggie containing pressed pills comprised of a mixture of MDMA and methamphetamine weighing 5.17 grams. R. 42 (PSR ¶ 18) (Page ID #175); Pritchett Br. at 3. Officers found in a pocket of the white jacket a loaded, 9mm black handgun. R. 42 (PSR ¶ 19) (Page ID #175); R. 30 (Plea Agreement ¶ 6) (Page ID #113).

Law enforcement also examined Pritchett's cell phone, which revealed a picture of the black handgun sitting alongside a pink handgun. R. 46-1 (Exhibits to Gov't Sent'g Mem. at 4) (Page ID #636). That image was dated October 21, 2019. *Id.*

Although police arrested Pritchett during the search, he appears to have been released. R. 42 (PSR ¶¶ 27, 29) (Page ID #176). In January 2020, police arrested Pritchett again after he returned to Kalamazoo from driving to Chicago. *Id*. ¶¶ 29–30 (Page ID #176). When officers searched Pritchett's car, they found a bag containing a mixture of heroin and fentanyl weighing 29.59 grams. *Id*. ¶ 31 (Page ID #177). They did not find any firearms or ecstasy. *Id.*

---

[1]MDMA is commonly known as ecstasy. *See, e.g.*, *United States v. Judge*, 649 F.3d 453, 455 n.1 (6th Cir. 2011); *United States v. Duckro*, 466 F.3d 438, 440 (6th Cir. 2006).

After this second arrest, the government charged Pritchett with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); possession—but not trafficking—of a mixture of MDMA and methamphetamine in violation of 21 U.S.C. § 844(a); and possession with intent to distribute heroin and fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). R. 9 (Indictment) (Page ID #31–34). In return for the government dropping the remaining charge, Pritchett pleaded guilty to the charges of being a felon in possession of a firearm and possession with intent to distribute heroin and fentanyl. R. 30 (Plea Agreement ¶¶ 1, 8) (Page ID #111, 115).

In the final presentence report, a probation officer calculated Pritchett's total offense level as twenty-three, which, combined with a criminal history category of III, resulted in a recommended guidelines range of between fifty-seven and seventy-one months. R. 42 (PSR ¶ 125) (Page ID #195). Part of this calculation included a four-level increase under U.S.S.G. § 2K2.1(b)(6)(B) for Pritchett's possession of the black handgun in connection with his trafficking in ecstasy. R. 42 (PSR ¶ 50) (Page ID #179). Pritchett repeatedly objected to this enhancement. *Id*. at Addendum (Page ID #200); R. 43 (Pritchett Sent'g Mem. at 8–11) (Page ID #209–12).

At sentencing, the district court determined that the firearm found in Pritchett's closet was used or possessed in connection with the trafficking of ecstasy. R. 55 (Sent'g Tr. at 11–12) (Page ID #1071–72). Consequently, the district court overruled Pritchett's objections and applied the sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). R. 55 (Sent'g Tr. at 12:17–19) (Page ID #1072). The court then sentenced Pritchett to fifty-seven months in prison as well as a term of supervised release, noting that it would not have imposed the same prison sentence if the enhancement did not apply. *Id*. at 22:7–14, 26:8–12 (Page ID #1082, 1086); R. 50 (J. at 2–3) (Page ID #1021–22). Pritchett timely appealed. R. 52 (Notice of Appeal) (Page ID #1031).

## II. DISCUSSION

On appeal, Pritchett disputes the procedural reasonableness of his sentence, maintaining that the record does not support the district court's application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). "Our review of procedural reasonableness includes determining whether the district court properly calculated a defendant's Guidelines range." *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014). "In the specific context of the § 2K2.1(b)(6)(B) firearm enhancement, 'we review the district court's factual findings for clear error and accord "due deference" to the district court's determination that the firearm was used or possessed "in connection with" the other felony, thus warranting the application of the . . . enhancement.'" *Id.* (quoting *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011)). In the district court, "[t]he government bears the burden of establishing the factors supporting this enhancement by a preponderance of the evidence." *Id.*

To secure the four-level increase in offense level under U.S.S.G. § 2K2.1(b)(6)(B), the government must establish that the defendant "used or possessed any firearm or ammunition in connection with another felony offense." Specifically, "per the application note, subsection (b)(6)(B) applies 'if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense.'" *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019) (quoting U.S.S.G. § 2K2.1(b)(6)(B) cmt. 14(A)). Relevant to Pritchett, who was not charged with trafficking ecstasy, "[t]he application note further explains that 'another felony offense' is 'any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.'" *Id.* (quoting U.S.S.G. § 2K2.1(b)(6)(B)

cmt. 14(C)). When that other felony offense is a drug-trafficking offense, the enhancement will apply if "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1(b)(6)(B) cmt. 14(B).

Given the scope of U.S.S.G. § 2K2.1(b)(6)(B), we have outlined several theories that could support a sentencing enhancement. *See United States v. Jackson*, 877 F.3d 231, 237 (6th Cir. 2017). The government has chosen to pursue the "fortress theory" in Pritchett's case. This theory "applies 'if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction.'" *Id.* (quoting *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009)). Underpinning the fortress theory is the recognition that, although "proximity may not be dispositive, it is certainly indicative of a connection between the guns and the drugs." *Angel*, 576 F.3d at 321 (quoting *United States v. Oglesby*, 210 F. App'x 503, 506 (6th Cir. 2007)).

It bears emphasizing that, with respect to the fortress theory, proximity is necessary but not sufficient for an enhancement to apply under U.S.S.G. § 2K2.1(b)(6)(B). "[P]ossession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the application of § 2K2.1." *Angel*, 576 F.3d at 321 (quoting *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001)). Put differently, the mere presence of a firearm in the same location as drugs does not necessarily lead to an enhancement under this theory. A defendant may, for instance, possess both a firearm and a small quantity of drugs solely for personal use without running afoul of § 2K2.1(b)(6)(B). *See United States v. Shields*, 664 F.3d 1040, 1045 (6th Cir. 2011).

Proximity, however, looms larger when the defendant is involved with drug trafficking. That is because it is "easier to see how a firearm facilitates drug trafficking transactions, than it is

5

to see how a firearm facilitates the mere possession of controlled substances" due to the fact that "a firearm can embolden the offender to carry a large amount of drugs, to show up at a location where the parties on the other side of the transaction are armed, and to ensure that both sides of the transaction are completed, i.e., that both the money and the drugs change hands." *Id*. at 1046. Again, there are limits. A defendant may both sell drugs and own firearms without incurring an enhancement under U.S.S.G. § 2K2.1(b)(6)(B), if they are stored in separate locations and the guns did not otherwise facilitate the drug sales. *See Jackson*, 877 F.3d at 239–41. But if a defendant keeps both the drugs that they traffic and the firearm that they possess near one another, then that defendant faces the possibility of a four-level increase at sentencing. *See, e.g.*, *Shanklin*, 924 F.3d at 920–21; *Taylor*, 648 F.3d at 432–33; *United States v. Hardin*, 248 F.3d 489, 496, 500 (6th Cir. 2001).

Reviewing the evidence presented by the government at Pritchett's sentencing hearing, the district court determined that "there is very strong evidence of drug trafficking in ecstasy pills." R. 55 (Sent'g Tr. at 11:19–20) (Page ID #1071). If the only proof of trafficking in ecstasy pills were the .58 grams of the drug found in Pritchett's bedroom and the 5.17 more grams found in his red jacket's pocket, then whether the district court's finding was clear error might be a closer question. After all, the amount of ecstasy is not large.

The search of Pritchett's cell phone, however, presented the district court with more evidence of trafficking in ecstasy than just the drug's presence in his closet. On May 30, 2019, Pritchett had the following exchange with a buyer via text message:

6

| | |
|---|---|
| [Pritchett] | u hmu |
| Incoming | This Rock u got excasty |
| [Pritchett] | yea |
| [Pritchett] | wya |
| Incoming | North wya |
| [Pritchett] | leavin west omw |
| Incoming | Bet |
| [Pritchett] | comin dwn westmain wya |
| Incoming | Stuart |
| [Pritchett] | ight |
| [Pritchett] | comin up street |
| Incoming | Ok |
| [Pritchett] | putside |

R. 48 (Text Messages with "chi chi") (Page ID #932). Pritchett had clearly been selling ecstasy by this date.

Had this been the only evidence of ecstasy trafficking, then the link between these dealings and what officers found during their search on November 19 might still be too attenuated. But Pritchett continued to document his ecstasy transactions. On September 29 and 30—only a month-and-a-half before the search of his home—Pritchett had the following exchange of text messages with one of his buyers:

| | |
|---|---|
| Incoming | These mfs are fake asf, someone better give me back my money! |
| [Pritchett] | i dont take pills im just the middle person [emoji] |
| [Pritchett] | Disliked "These mfs are fake asf, someone better give me back my money!" |
| [Pritchett] | [Emoji] |
| Incoming | Well you need to let that personknow thati thats bullshit, he will b found out, im moving out here this week to about a mile down the road and ill b in a |
| Incoming | house with more room and shit so thats the reason i needed those! |
| [Pritchett] | i want repeat customers n you no that i dont deal in bs |
| [Pritchett] | i already sent him a screenshot of your message I wont be dealin w him any more i dont no how or wats the difference but ill find diff ones |

R. 48 (Text Messages with "Rick r") (Page ID #975).

7

Although Pritchett argues that the reference to "pills" is too vague to link these messages to ecstasy, the only drug that officers found in pill form during their search of his house was ecstasy. Therefore, regardless of whether the evidence was "very strong," the district court did not clearly err in concluding that Pritchett trafficked in ecstasy based on the text messages and on the presence of the drug and digital scale in his home.

Against this conclusion, Pritchett advances three counterarguments. To begin, Pritchett contends that the first recorded date on which he possessed the black handgun—October 21, 2019—does not overlap with any of his documented ecstasy deals. The argument that there must be a temporal and physical connection between the trafficked drugs and the facilitating firearm has appeal. We have indicated that the defendant must be currently engaged in drug trafficking for U.S.S.G. § 2K2.1(b)(6)(B)'s enhancement to apply under a proximity theory. *See Shields*, 664 F.3d at 1045 ("[W]hile close proximity between a firearm and drugs will suffice to justify the enhancement when an offender *is engaged* in drug trafficking, in other cases the enhancement applies only if the government can establish that the firearm actually or potentially *facilitated* that offense." (quoting *United States v. McKenzie*, 410 F. App'x 943, 945 (6th Cir. 2011) (first emphasis added)). A defendant who retires from drug dealing, but who continues to possess small amounts of illicit substances solely for personal use, may be able to escape a sentencing enhancement under § 2K2.1(b)(6)(B) if caught with a firearm.

But that is not this case. Although Pritchett told officers after being arrested following the search of his home that he regularly used ecstasy, the record calls this into question. R. 42 (PSR ¶ 24) (Page ID #176). Indeed, about a month-and-a-half before the search, Pritchett told a buyer that he did not use ecstasy, but only sold it. R. 48 (Text Messages with "Rick r") (Page ID #975).

This comment came during an exchange in which Pritchett sought to soothe a disgruntled buyer of "pills" in order to ensure that he would have "repeat customers." R. 48 (Text Messages with "Rick r") (Page ID #975). Law enforcement discovered ecstasy pills in Pritchett's jacket a month-and-a-half after this exchange. R. 42 (PSR ¶ 18) (Page ID #175). Nearby was the loaded black handgun and more ammunition for it. *Id.* ¶¶ 18–19 (Page ID #175). Nothing in the record indicates that Pritchett stopped selling ecstasy in the interim. The evidence in this case is sufficient to conclude that the district court did not clearly err in finding that Pritchett was trafficking ecstasy at the time officers searched his house, and that he possessed the handgun in connection with these dealings.

Next, Pritchett argues that the quantity of ecstasy was too small to support the district court's finding that he was trafficking in ecstasy. Perhaps this would be true if there was no other evidence in the record of Pritchett's trafficking of this drug aside from its quantity. The amount of ecstasy located in Pritchett's home, however, does not stand alone. Pritchett's own words support the inference drawn by the district court that the ecstasy was for selling rather than just possessing.[2]

Finally, Pritchett's attempt to flip the inference drawn from the gun—that is, from possessing the gun to selling it—is also unconvincing. Although "whether the defendant has an innocent explanation for the firearm" is a factor to be considered in the enhancement calculation, so, too, is "[t]he proximity of the gun to the drugs . . . . , the type of firearm[,] and whether it is loaded." *Taylor*, 648 F.3d at 432–33. The firearm was in the same closet as one of the stashes of

---

[2]Pritchett additionally suggests that because there is no evidence that he sold ecstasy from his home, the fortress theory is untenable, but we have previously rejected a similar argument. *See Hardin*, 248 F.3d at 500.

9

ecstasy.  Handguns are also known tools of the drug trade.  *See United States v. Hough*, 276 F.3d 884, 895 (6th Cir. 2002).

Furthermore, it is unclear whether Pritchett ever sought to sell the black handgun rather than just a different, pink one.  Pritchett suggests that the exhibits attached to the government's sentencing memorandum indicate that both the black handgun, which law enforcement found in his closet, and the pink handgun, which the police never recovered, were for sale and a buyer merely picked one.  R. 46-1 (Exhibits to Gov't Sent'g Mem. at 1–5) (Page ID #633–37).  Although Pritchett and the government stipulated to the fact that he sent a photo of both handguns via text message to another person on October 21, 2019, it is difficult to discern what his intentions in sending this image were.  R. 30 (Plea Agreement ¶ 6) (Page ID #113–14).  In the text of the messages that followed the image, Pritchett references having a gun for sale, but the only discussion is about the pink handgun.  R. 48 (Text Messages with "quarry cuhcuh") (Page ID #991).  Two other exchanges with someone named "Brandon" on October 25 and October 29 indicate that Pritchett was interested in selling only the pink handgun to this person.  R. 46-1 (Exhibits to Gov't Sent'g Mem. at 1–3) (Page ID #633–35).

Even if the black handgun had once been for sale, the fact that it was loaded when officers discovered it indicates that Pritchett was more interested in the weapon's use value than in its exchange value at the time of the search.  *See United States v. Burns*, 498 F.3d 578, 581 (6th Cir. 2007).  Thus, the district court did not clearly err in finding by a preponderance of the evidence that this use was to facilitate Pritchett's ecstasy trafficking.

### III.  CONCLUSION

For those reasons, we **AFFIRM** the judgment of the district court.