*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0273P (6th Cir.)
File Name: 01a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

RONALD ALAN ENNENGA,
  *Defendant-Appellant.*

No. 00-1226

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00093—Robert Holmes Bell, Chief District Judge.

Argued: June 8, 2001

Decided and Filed: August 17, 2001

Before: GUY, NORRIS, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Sharon A. Turek, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Joan E. Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Sharon A. Turek, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Joan E. Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

1

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Ronald Alan Ennenga pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In this appeal of his sentence, Ennenga challenges the application of § 2K2.1(b)(5) of the United States Sentencing Guidelines, which provides for a four-level increase in the offense level if the defendant possessed a firearm in connection with another felony offense.  For the reasons set forth below, we **AFFIRM** Ennenga's sentence.

## I. BACKGROUND

### A.  Factual background

Ennenga, a 59-year-old resident of Spring Lake, Michigan, resided in the basement of a  house owned by Pat Sudgen. Sudgen described Ennenga as a heavy drinker and a paranoid man who kept to himself and frequently talked about guns and bombs.  On May 7, 1999, the West Michigan Enforcement Team of the Michigan State Police (WEMET)  received a tip from an informant who claimed that Ennenga was growing marijuana in the furnace room of the basement where he lived.  The informant also told the police that Ennenga was stockpiling weapons in his basement, carried a handgun, and had set up bombs made with mercury explosives to protect his stash of marijuana plants.  After WEMET contacted the United States Bureau of Alcohol, Tobacco and Firearms, agents from both law-enforcement agencies searched Ennenga's garbage on two separate occasions in late May and early June of 1999.  During these searches, the agents found marijuana seeds, marijuana plant stems, and marijuana cigarette ends.  The agents then obtained a search warrant for Ennenga's basement apartment.  They executed the warrant on June 3, 1999.

As a result of the search, the agents discovered 34 marijuana plants in the furnace room, as well as several grow lights and large light bulbs. Twenty-seven more marijuana plants were found in the bed of a pickup truck parked outside. Despite the informant's tip stating otherwise, no explosive devices were found in Ennenga's basement apartment. Nevertheless, a Michigan State Explosives Officer did discover a functional electric alarm system designed to activate if the door to the basement apartment was opened without disarming the system.

The agents also came across a locker in the hallway of the basement that contained five guns: one Springfield 20 gauge semi-automatic shotgun, two Marlon .22 caliber semi-automatic rifles, one Remington 12 gauge pump-action shotgun, and one Dan Wesson .357 caliber revolver. Other contents of the locker included a shoulder holster, ammunition for three of the guns, a handgun trigger lock, a handgun front sight, and a quart of mercury. Two locks were found on the locker, but only one was fastened. Both Ennenga and Sudgen had keys to the lock that remained unfastened. Ennenga, however, possessed the only key to the other lock.

Although the firearms all belonged to Sudgen, her access to them was further restricted because Ennenga had installed a slide-lock on the basement door, and only he had the key. Finally, in Ennenga's bedroom, agents discovered a small amount of marijuana in a bedside cabinet as well as on a dresser top, a marijuana cigarette in an ashtray, a grow light, at least one box of .357 magnum pistol ammunition, and paperwork for a handgun laser sight.

## B.  Procedural background

Pursuant to the superseding indictment, Ennenga was charged with one count of illegally manufacturing marijuana plants, in violation of 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of one or more firearms in violation of 18 U.S.C. § 922(g)(1). On August 25, 1999, Ennenga and the government entered into a plea agreement in

which he pled guilty to the firearms count, and the United States dropped the count alleging the manufacture of controlled substances. The presentence report (PSR) recommended a special-offense adjustment of four levels pursuant to § 2K2.1(b)(5) of the United States Sentencing Guidelines, which requires such an increase when a "defendant . . . possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." Ennenga objected to this recommendation.

The district court overruled Ennenga's objection at the sentencing hearing. He was then sentenced to 36 months of imprisonment and 3 years of supervised release. Ennenga timely appealed from the imposition of this sentence.

## II. ANALYSIS

### A. Standard of review

When reviewing a district court's sentencing decisions, we "will disturb the underlying factual findings only if they are clearly erroneous." *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996). Although the application of a guideline to factual situations has, in the past, been subject to de novo review, *see id.*, the Supreme Court's recent decision in *Buford v. United States*, 121 S.Ct. 1276, 1281 (2001), suggests that our standard of review even with regard to these questions of law should instead be deferential. *See United States v. Hardin*, 248 F.3d 489, 495 (6th Cir. 2001) (declining to decide whether the term "in connection with" under § 2K2.1 was subject to a deferential standard of review, even though "we would be inclined to conclude that under *Buford*" such deference is required).

In *Buford*, the defendant challenged the district court's application of United States Sentencing Guidelines § 4B1.1, in which a court must determine whether a defendant is a career offender. When computing a defendant's felony history, § 4A1.2 tells the sentencing court to count "related offenses" as a single offense. The question on appeal in

his possessions in his basement apartment, which included his sizeable stash of marijuana plants."

Finally, Ennenga suggests that because there was no evidence that he was distributing drugs, the fortress theory has less force. Although the other felony offense in most § 2K2.1 cases involves drug distribution, this is not an exclusive prerequisite. When one is in possession of a large and valuable stash of drugs, the desire to protect these illicit substances can be compelling. *Henry*, the case in which this court expanded upon the fortress theory, in fact focused on the use of weapons "to protect the drugs" as an alternative to their use in facilitating a drug transaction. *See United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989). Accordingly, we find no error in the district court's application of § 2K2.1 to the case before us.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Ennenga's sentence.

keeping the door locked and the alarm set further supported, according to the district court, the conclusion that he was "holed up" in his basement "fortress," the protection of which was maintained by weapons and an alarm. In addition, the district court's conclusion is supported by the lack of evidence showing any other reason for Ennenga having these firearms, such as for target practice or hunting.

Ennenga's appeal relies primarily on the holding of an unpublished opinion from this court, *United States v. Gragg*, No. 97-511, 1998 WL199816 (6th Cir. Apr. 14, 1998) (unpublished table decision), in which the district court's application of § 2K2.1 was reversed under the circumstances of that case. In *Gragg*, the police searched the defendant's premises and discovered an attic full of 80 marijuana plants, two guns in a downstairs living room, marijuana seeds and paraphernalia in a second-floor room, and a revolver in the defendant's barn. Adjacent to the barn was a field with more marijuana plants. Based on the lack of proximity between the firearms and the marijuana plants, this court held that the firearms were not possessed "in connection with" the marijuana production.

As a threshold matter, we question the correctness of the *Gragg* decision. We need not concern ourselves with any perceived inconsistency, however, because *Gragg* is an unpublished case and therefore not a controlling precedent. *See* 6 Cir. R. 28(g); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir. 2000). Furthermore, *Gragg* was issued before the Supreme Court's ruling in *Buford*, which imposed a new level of deference upon appellate courts when reviewing the application of the Sentencing Guidelines by a district court. Finally, the instant case is distinguishable based upon one key fact relied upon by the district court: the existence of the alarm system. This alarm system, in conjunction with the existence of Ennenga's cache of weaponry, supports the application of the fortress theory. The district court reasonably concluded that Ennenga had "established a system by which he could protect himself and

*Buford* was not "any relevant underlying issue of fact. [Buford] disagreed only with the District Court's legal conclusion that a legal label – 'functional consolidation'– failed to fit the undisputed facts." *Buford*, 121 S.Ct. at 1279.

The Supreme Court concluded that this narrow question on appeal requires a "deferential standard of review," based in part on the wording of the federal sentencing statute, 18 U.S.C. § 3742. This statute commands a reviewing court to "'give *due deference* to the district court's application of the guidelines to the facts.'" *Buford*, 121 S.Ct. at 1279 (quoting 18 U.S.C. § 3742(e) (emphasis in original).

The deference required by *Buford* was also based on "the fact-bound nature of the legal decision, the comparatively greater expertise of the District Court, and the limited value of uniform court of appeals precedent." *Hardin*, 248 F.3d at 493 (quoting *Buford*, 121 S.Ct. at 1281). *Hardin* concluded that

> [t]here is greater expertise in the district court, which has experienced many sentencings requiring similar fact-bound determinations--whether the location of certain contraband was connected to the location of the evidence forming the basis for the conviction is one such situation. Finally, we believe that in the instant case, as in *Buford,* there is "limited value of uniform court of appeals precedent" on the specific factual scenario; [that a firearm is "in connection with" the drugs utilized in another drug offense].

*Hardin*, 248 F.3d at 493. We conclude that the rationale of *Buford*, combined with *Hardin*'s analysis in the context of § 2K2.1, calls for a deferential standard of review in the present case. Accordingly, we will review the district court's application of § 2K2.1 under this standard.

**B.  The district court did not err when it increased Ennenga's offense level pursuant to § 2K2.1**

Section 2K2.1(b)(5) of the United States Sentencing Guidelines instructs a court to increase a defendant's felony offense by four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense."  Because Ennenga objected to the recommendation of the PSR that § 2K2.1 apply, the district court was required to make findings of fact in order to determine whether or not this guideline is applicable to his sentence.  *See* Fed R. Crim. P. 32(c)(1).

After hearing Ennenga's argument contesting the application of § 2K2.1, the district court overruled his objections.  The court based its decision on several factors.  First, the district court pointed to the uncontested fact that Sudgen had no access to the guns due to the locks on the basement door and the locker.  Second, the court noted that Ennenga was a paranoid man, infatuated with guns and bombs, who had "holed" himself up in a basement apartment with an alarm system activated at all times.  Finally, given the fact that paperwork for a handgun laser sight as well as at least one box of powerful ammunition were found in his bedroom, the court perceived Ennenga's acquisition of firearms and ammunition to encompass a desire to protect all that was his, including his marijuana plants.  The district court thus concluded that

> the accessibility to the firearms, the infatuation with them, the ammunition in the bedroom all gives this Court – and the facts and circumstances of Mr. Ennenga's mental condition all gives this Court reason to believe that those guns would have been used should someone have come in for purposes of dealing with the marijuana.

It is this conclusion that Ennenga now challenges on appeal.

We first note that Ennenga does not contest that there was another felony offense.  He readily concedes that the growth of marijuana plants satisfied this element of § 2K2.1.

Furthermore, Ennenga does not challenge any of the district court's findings of fact.  The sole question on appeal thus boils down to whether § 2K2.1 was properly applied to the undisputed facts of this case.

Ennenga is correct in pointing out that the government must prove that there was a nexus between the firearms and the other felony offense, and that possession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the application of § 2K2.1.  *See United States v. Hardin*, 248 F.3d 489, 498 (6th Cir. 2001).  Nevertheless, this court, in its interpretation of the "in connection with" clause, has adopted the "fortress theory," which concludes that a sufficient connection is established "if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction."  *United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989); *see also United States v. Covert*, 117 F.3d 940, 948-49 (6th Cir. 1997) (holding that the fortress theory still applies to § 2K2.1).  Put differently, § 2K2.1 applies if "the firearm had some emboldening role in defendant's felonious conduct."  *United States v. Polanco*, 93 F.3d 555, 567 (9th Cir. 1996) (internal citation and quotation marks omitted).

Ennenga challenges the application of the fortress theory to this case, based primarily on his contention that the guns were all found in the locker and were not located in the bedroom or furnace room, where the marijuana plants and marijuana cigarettes were found.  He also points out that there is no evidence that he ever sold marijuana.  Ennenga, however, ignores two key facts relied upon by the district court.  First, § 2K2.1 is not only concerned with guns, but with ammunition as well.  The district court noted that "high-powered ammunition" for the revolver was found in Ennenga's bedroom.  The prohibited contraband, then, was not confined solely to the locker.  Second, and most important, the district court relied upon the alarm system that Ennenga had rigged up to the basement door.  His practice of