NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0075n.06

No. 19-6210

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 05, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| JEREMY BECK, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SILER, GIBBONS, and KETHLEDGE, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Jeremy Beck pled guilty to one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) in the Western District of Tennessee. At sentencing, the district court calculated a base offense level of 22 because he had a prior controlled substance felony conviction. U.S. SENT'G GUIDELINES MANUAL § 2K2.1(a)(3). Beck was previously convicted of possession of marijuana with intent to sell in violation of Tennessee Code § 39-17-417(a)(4). The district court also applied a four-point enhancement for possessing the firearm "in connection with another felony offense," because Beck was found with the firearm, cash, and a number of cell phones, and drugs, drug residue, scales, and packaging materials were found in other rooms of the house. U.S. SENT'G GUIDELINES MANUAL § 2K2.1(b)(6)(B). Beck received a low-end sentence of 57 months. Beck appeals both the calculation of his base offense level and the application of the four-point enhancement. Because the district court did not plainly err in calculating Beck's sentence, we affirm.

## I.

In September 2018, a witness identified Jeremy Beck via photo lineup as having shot four people at a nightclub in Memphis, Tennessee. Officers arrived at 728 Looney Road, also in Memphis, to search for Beck. The house belonged to Beck's cousin, Leonisha Williams, who allowed the officers to enter and search her home for him. The officers found Beck "in a crawl space" located underneath the air conditioning and heating system in the house. (DE43, Revised PSR, Page ID 149.) In that same crawl space, officers found a Smith and Wesson 5.56-caliber rifle, four cell phones, and $7,000 in cash, along with $575 that they recovered from Beck's pocket. The officers searched the rest of the residence, and they discovered marijuana residue and 85.08 grams of liquid hydrocodone in the bedroom where Beck was staying.[1] They found scales and packaging consistent with shipping narcotics in the kitchen. The officers arrested Beck.

While in jail, Beck made several phone calls. During one such phone call, which was recorded, Beck can be heard conversing with an unidentified male, presumably about the events surrounding his arrest. Beck told the caller that "[t]hem folks found the AR. Them bitches took my drink. They try to say my drink was the probable cause to take my money." (*Id.*) The unidentified man asked Beck "what you doing loading like that[,]" to which Beck eventually responded that "[he] was on the run." (*Id.*)

Beck pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[2] There was no plea agreement. He was not charged in federal court for conduct directly related to the nightclub shooting.

---

[1] Beck argues on appeal that "[t]he [Presentencing Investigation Report] is inconsistent as to whether [he] was … staying at Williams's residence." (CA6 R.25, Appellant's Br., at 24.) However, the report notes in more than one place that Beck was "staying" in the bedroom where the drugs were found. (DE43, Revised PSR, Page ID 149, 150.) The district court adopted the majority of the PSR's findings and Beck did not object.

[2] Beck was initially indicted on December 13, 2018. He pled guilty on April 1, 2019, but in June 2019 the Supreme Court decided *Rehaif v. United States*, which held that in order to convict under 18 U.S.C. § 922(g)(1) for being a

The probation office prepared a Presentence Investigation Report ("PSR"), which calculated his base offense level at 22 because of his prior controlled substances felony conviction under Tennessee Code § 39-17-417. The PSR then recommended a four-point enhancement under Sentencing Guideline § 2K2.1(a)(3) for possessing the firearm "in connection with another felony offense." (DE43, Revised PSR, Page ID 150.) The PSR noted two justifications for this enhancement: the nightclub shooting and the fact that the officers found cash and four cell phones with Beck and marijuana residue and 85.08 grams of hydrocodone "in a room where [he] was staying." (*Id.*) Before sentencing, Beck filed objections to the PSR: one to the base offense level calculation and one to the four-point enhancement. At the sentencing hearing, however, Beck's lawyer informed the court that he was withdrawing the objections, noting that the government was recommending a low-end sentence of 57 months. Beck had a short exchange with the court following this retraction, expressing his concern that "the facts [were] more strong on the Government's side than [his] side" and that he was "on a two way losing street." (DE55, Sentencing Hr'g Tr., Page ID 300:11−12, 21.) In response to Beck's concerns, the court assured him that "it's an open plea" and that Beck had "a right to appeal." (*Id.* at Page ID 300:24−25.) The court also discussed the possibility of continuing the sentencing to give Beck more time, but the parties ultimately decided to proceed with the hearing.

In light of pending state court proceedings regarding the nightclub shooting, the parties further agreed that the four-point enhancement was based solely on "[Beck's] possession of $7,000, four cell phones and 85.08 grams of hydrocodone liquid at the time of the firearm possession." (*Id.* at Page ID 306:14−16; *see also id.* at Page ID 310:3−8.) The court, therefore,

---

felon in possession the government must prove that the defendant had knowledge of his status as a felon. 139 S. Ct. 2191 (2019). Accordingly, the government issued a superseding indictment on August 29, 2019 including this knowledge-of-status element.

adopted the facts set forth in the PSR, with the exception of the statement that "[Beck] possessed a firearm in connection with a nightclub shooting." (*Id.* at Page ID 308:12−309:3; DE43, Revised PSR, at Page ID 150.) There were no objections at that time.

The court proceeded to apply the four-point enhancement, stating that "the money and the cell phones, I suppose, all go together" and that "at the time of his arrest there was found on [Beck's] possession $7,000, four cell phones found near the firearm possessed by [Beck]; and . . . residue and 85.08 grams of hydrocodone, the liquid, were in the room where [Beck] was staying." (DE55, Sentencing Hr'g Tr., Page ID 310:7−16.) Again, there were no objections. The court also applied a three-point reduction for acceptance of responsibility, leaving Beck with a total offense level of 23. Beck's final guideline range was 57 to 71 months. Beck requested a variance, discussing his traumatic background, struggles with mental health and substance abuse, and willingness to participate in counseling, but the court denied the request and ultimately sentenced Beck to 57 months, the lowest end of the guideline range.

## II.

Beck makes two arguments on appeal. First, he argues that the district court erred in applying the four-point sentencing enhancement because Beck was charged with only a misdemeanor in state court, he was found in another person's residence, and the firearm and drugs were located in different rooms. Second, he argues that the district court erred in calculating his base offense level. The district court calculated a higher base level pursuant to Sentencing Guideline § 2K2.1(a)(3), which requires a base of 22 when the offense involved a high-capacity semiautomatic firearm and the defendant has a prior controlled substance felony conviction. He argues that his prior Tennessee conviction for possession of marijuana with an intent to sell cannot qualify as a controlled substance conviction under this court's decision in *United States v. Havis*,

927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam). The government contends that by withdrawing his objections at the sentencing hearing, Beck waived the right to appeal his sentence. We disagree; Beck did not waive his right to appeal. But we affirm the sentence because the district court properly applied the four-point enhancement and correctly calculated the base offense level.

### A.

The government argues that Beck, by withdrawing his objections to the PSR, waived the right to appeal his sentence. Beck did not abandon his right; he merely withdrew his objections.

The difference between waiver and forfeiture can often elide distinction, but in this context it is possible to distinguish between the two. A defendant forfeits an argument by failing to assert it in a timely fashion (i.e., before the district court), whereas a defendant waives a claim only by knowingly and intentionally relinquishing it. *United States v. Olano*, 507 U.S. 725, 733 (1993). Where a criminal defendant forfeits an argument, he may appeal based on that argument and the appellate court will be limited to reviewing it for plain error. FED. R. CRIM. P. 52(b). Where a defendant waives a claim by knowingly and intentionally relinquishing it, however, that claim is "not reviewable" on appeal. *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002). In the context of a sentencing issue, "[a] criminal defendant waives a challenge to the application of a particular guideline where he expressly agrees that the guideline applies to him." *United States v. Ruiz*, 777 F.3d 315, 320 (6th Cir. 2015) (citing *Aparco-Centeno*, 280 F.3d at 1088).

The government argues that by objecting to the PSR's base level calculation and enhancement recommendation, and then withdrawing those objections, Beck expressly agreed to the 57 to 71 month guideline range. Beck counters that he never "explicitly agree[d] with [the

guideline] calculation," and instead that at most he "failed to object." (CA6 R.28, Reply Br., at 4.)

Our case law does not specify a clear answer. In Beck's favor, in most waiver cases the defendant made an express statement (written or oral) agreeing to the guideline calculations. *See e.g., Ruiz*, 777 F.3d at 320 (finding waiver where defendant "agreed" to the calculation and "even explained the basis for his agreement"); *Aparco-Centeno*, 280 F.3d at 1088 (holding that the defendant waived the claim where he agreed to the underlying facts in a memorandum and motion); *United States v. Hall*, 373 F. App'x 588, 592 (6th Cir. 2010) (holding that the defendant waived the argument that he should not be sentenced under the Armed Career Criminal Act where defense counsel stated, "I certainly understand that he's a, pursuant to statute, an armed career criminal").

On the other hand, some cases suggest that withdrawing an objection without further action constitutes a waiver. In *United States v. Denkins*, we found that a defendant waived any objection to the district court's denial of his motion to withdraw his guilty plea when the defendant filed an objection to the PSR but withdrew those objections at the sentencing hearing. 367 F.3d 537, 543−44 (6th Cir. 2004). Similarly, in *United States v. Sheppard*, we held that a defendant waived his right to appeal the admission of certain evidence when he "withdr[ew] his motion to suppress prior to trial." 149 F.3d 458, 461 (6th Cir. 1998). It was on the basis of these two cases that we said in *Hall* that "[n]o doubt, the withdrawal of an objection would constitute a waiver." 373 F. App'x at 592. However, that case is unpublished and not binding. Further, *Hall* conflicts with other case law on the same issue. In *United States v. Chambers*, we held that where "counsel withdrew [an] exception, this [c]ourt reviews [the claim] for plain error." 441 F.3d 438, 455 (6th Cir. 2006). In an unpublished case, we held that where "counsel objected to testimony and then

withdrew the objections *without explicitly conceding admissibility*," we "apply plain error review." *United States v. Rodriguez*, 544 F. App'x 630, 634 (6th Cir. 2013) (emphasis added).

Significant in Beck's case was the district court's clear assurance to Beck that his plea was "open" and that he would have "a right to appeal." (DE55, Sentencing Hr'g Tr., Page ID 300:24−25). The court assured Beck of his right to appeal *after* Beck made clear that he was withdrawing his objections to the PSR.

In keeping with the notion of waiver as an intentional relinquishment of rights, we think that absent an express agreement or concession, merely withdrawing an objection does not operate as a waiver, and we will apply plain error review on appeal. Because Beck merely withdrew his objections to the PSR and did not explicitly agree to waive his rights, we will proceed to address the merits of his claim for plain error.

## B.

"We typically review a sentence for procedural reasonableness under a 'deferential abuse-of-discretion' standard." *United States v. Jeter*, 721 F.3d 746, 755 (6th Cir. 2013) (quoting *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010)). However, where a defendant fails to object to the sentence before the district court, the panel must review his sentence for plain error. *Id.* at 755−56. On plain error review, we "may reverse for '(1) error, (2) that is plain, and (3) that affect[s] substantial rights' if '(4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Buchanan*, 933 F.3d 501, 508 (6th Cir. 2019) (quoting *United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019) (alterations in original)).

Beck first challenges the application of the four-point sentencing enhancement for possessing the firearm "in connection with" another felony. U.S. SENT'G GUIDELINES MANUAL § 2K2.1(b)(6)(B). This provision states that when the defendant "used or possessed any firearm or ammunition in connection with another felony offense," the defendant's base offense level is

increased by four points. *Id.* The burden is on the government to establish that the enhancement applies by a preponderance of the evidence. *See United States v. Mukes*, 980 F.3d 526, 533 (6th Cir. 2020). "[T]he government must prove that there was a nexus between the firearms and the other felony offense." *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001). "[P]ossession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the [enhancement]." *Id.*

Beck argues that the district court could not have considered the "cell phones, money, and hydrocodone found in Williams's house" because "in his related state case" he was charged only with misdemeanor possession of drug paraphernalia. (CA6 R.25, Appellant's Br., at 20.) Beck acknowledges that the district court "can consider other offenses regardless of whether a charge is actually brought," but argues that the enhancement "generally" applies in cases where the defendant has been found liable for the felony conduct. (*Id.*) Whether that is generally true is irrelevant, because "a defendant need not face charges or be convicted of the other felony offense for the enhancement to apply." *Mukes*, 980 F.3d at 535 n.3 (citing U.S.S.G. § 2K2.1 cmt. n.14(C)). The government need only "establish[] the factors supporting this enhancement by a preponderance of the evidence" at sentencing. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014).

The district court correctly relied on the evidence of drug trafficking found on and around Beck at the time of his arrest. Beck was found in a crawl space with a firearm, $7,000 in cash, and four cell phones. The evidence was also sufficient to support the district court's findings that the drugs and trafficking materials ("scales and packaging consistent with narcotics," along with hydrocodone and residue found in the bedroom where Beck was staying) belonged to him. (DE55 Sentencing Hr'g Tr., Page ID 310:15–16, 318:12–13.) The fortress theory, although discussed by

8

both parties, does not fit the facts of this case. Beck was staying at the house where he was found, but there is little suggestion that he exercised control over it. *See, e.g., United States v. Taylor*, 648 F.3d 417, 432–33 (6th Cir. 2011). His sentence can, however, be sustained without reference to the fortress theory. Beck was found with significant evidence of drug trafficking on and around his person. Further, in a recorded phone call from the jail, Beck admitted that the police seized his "drink," presumably a reference to the hydrocodone. (DE43, Revised PSR, Page ID 149.) Accordingly, we hold that the government met its burden that Beck's firearm was connected to felony drug trafficking. *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006) (finding that drug trafficking "is generally a cash business," and "cellular phones are commonly associated with drug trafficking."); *see also United States v. Gilbert*, 952 F.3d 759, 763−64 (6th Cir. 2020) (cash, money counters, and numerous cell phones are all indicia of drug trafficking).

We need not proceed with the rest of plain error review because there was no error. *United States v. Igboba*, 964 F.3d 501, 510 (6th Cir. 2020) (citing *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018)).

## C.

Beck next argues that the district court erred in calculating his base offense level of 22. The base level is 22 "if (A) the offense involved a … semiautomatic firearm that is capable of accepting a large capacity magazine … and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S. SENT'G GUIDELINES MANUAL § 2K2.1(a)(3). Beck argues that his prior conviction of possession of marijuana with intent to sell under Tennessee Code § 39-17-417(a)(4) is not a controlled substance offense within the guidelines' definition.

The guidelines define a controlled substances offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits … the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S. SENT'G GUIDELINES MANUAL § 4B1.2(b). Whether a prior conviction counts as such a felony offense "is a question of law subject to de novo review." *Havis*, 927 F.3d at 384 (citing *United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009)).

To determine this, the Sixth Circuit applies the three-step "categorical approach" by (1) mapping out "what conduct is criminalized under the guidelines' definition," (2) doing "the same for conduct criminalized under the state law that led to the conviction," and then (3) "overlay[ing] the two" to determine whether the "least culpable conduct" that the state law proscribes is within the boundaries of the guidelines' definition. *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020). In other words, we must determine whether the state law prohibits *any* conduct (even conduct of which the defendant has not been convicted) that does not fall within the guidelines' definition of a controlled substances offense. *Id.* If it does, then the state offense cannot be a controlled substances offense for the purposes of the guidelines. *Id.* If, however, all the conduct proscribed by the state law falls within the guidelines' definition, then the state offense does qualify as a federal controlled substance offense. *Id.*

When a statute is divisible, meaning that it "sets out one or more elements of the offense in the alternative," we apply the "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 257 (2013). In these cases, we look at the record "to determine which alternative [element] formed the basis of the defendant's prior conviction" and then apply the categorical approach to that alternative element in the defendant's prior conviction. *Id.* Beck's prior conviction was under Tennessee's drug statute, which is one such divisible statute. *United States*

*v. Goldston*, 906 F.3d 390, 394 (6th Cir. 2018). This simply means that we must apply the categorical approach to determine whether Beck's specific prior conviction—possession of a controlled substance with the intent to sell, § 39-17-417(a)(4)—is a controlled substance offense under the Sentencing Guidelines.

We applied the categorical approach to § 39-17-417 in *Havis*. 972 F.3d at 384−85. We held that, because the least culpable conduct under "delivery" is "the attempted delivery of a controlled substance," and the definition of a controlled substance offense within the Sentencing Guidelines does *not* include attempt crimes, a prior conviction for delivery under the Tennessee statute did not qualify as a controlled substance offense. *Id*. at 385–87. Beck argues that *Havis* prevents his own previous conviction, possession with the intent to sell, from being a controlled substance offense because "attempt is implicit in an intent to sell." (CA6 R.25, Appellant's Br. at 32.) However, we have since explained that in *Havis*, "the *parties agree[d]* that the least culpable conduct" proscribed by the statute was attempted delivery. *Garth*, 965 F.3d at 497 (quoting *Havis*, 927 F.3d at 385) (alteration in original) (emphasis added). We further reasoned that "[w]ere we to extend that agreement [to other cases], strange results would follow." *Id.* This is because the analogous federal statute prohibiting delivery has the same definition as the Tennessee statute, and it cannot be that the federal distribution statute falls "outside the guidelines' definition of a controlled substance offense." *Id.* In *Garth* we concluded that possession with intent to deliver under Tennessee law, the same statute under which Beck was convicted, "is categorically a controlled-substance offense under" the guidelines. *Id.* at 498.

Because Beck's prior conviction was a controlled substance conviction within the guidelines' definition, the district court did not err in calculating Beck's base offense level.

11

**III.**

Because the district court did not err in calculating Beck's base offense level or in applying the four-point enhancement for using the firearm "in connection with another felony," we affirm.