NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0002n.06

Case No. 24-3066

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 03, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| LARELLE CROMITY, | ) | OHIO |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: THAPAR, NALBANDIAN, and RITZ, Circuit Judges.

THAPAR, Circuit Judge. After Larelle Cromity pled guilty to being a felon in possession of ammunition, the district court applied two sentencing enhancements: one for using bullets in connection with another felony, and another for obstructing justice. Cromity now argues those enhancements make his sentence procedurally unreasonable. They don't, so we affirm.

I.

This case stems from a traffic incident in Cleveland. After a car turned in front of Larelle Cromity's truck, Cromity honked, leaned out the window, and swore at the driver. When the other driver opened the door and pointed towards the truck, Cromity, a felon, brandished a handgun at the car. The other driver got back in and drove off. But Cromity opened fire and shot five bullets towards the fleeing car while multiple children played nearby. Numerous shell casings fell onto the street. Cromity then fled the scene.

Police arrived ten minutes later. They collected the casings and investigated the source of the shots. A witness also said the car driver fired at Cromity's truck. As part of the inquiry, police learned that two cameras—a surveillance camera and a Ring video camera—captured the whole event. When police reviewed the tapes, they saw that the truck driver opened fire at the car as it sped away. And they never saw the car driver wield a gun or shoot. The tapes also let officials identify Cromity as the truck driver. They arrested him soon after.

Cromity then made several incriminating statements. First, he told investigators that he knew he'd been convicted of felonies, and that these crimes meant he couldn't have the bullets he fired. But Cromity claimed that the car driver had first pointed a firearm at him and threatened to "shoot his face off." R. 21, Pg. ID 111. (A witness on the scene also informed police that someone made this statement.) Cromity also reported that he didn't have the gun because he melted it down.

A grand jury indicted Cromity for being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and he pled guilty.

The presentence report ("PSR") proposed applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing the ammunition in connection with another felony offense, namely firing weapons in an area where children are present. And it proposed applying a two-level enhancement under U.S.S.G. § 3C1.1 for obstructing justice because Cromity melted and destroyed his firearm.

Cromity raised two objections that are relevant here. First, he asserted that he fired his gun in self-defense only after seeing the car driver's weapon, so he didn't commit a felony. Second, he claimed that he didn't willfully obstruct justice. He alleged that there was no evidence he had access to a furnace that could melt a gun. And, if he did melt the gun, he claimed that he didn't intend to obstruct the administration of justice.

At sentencing, the court applied both enhancements, resulting in a Guidelines range of 120 to 150 months.  The court imposed a 144-month sentence, followed by three years of supervised release.  Cromity appealed.

## II.

On appeal, Cromity argues that the district court's decision to apply both enhancements renders his sentence procedurally unreasonable.  His arguments about both provisions fail.

## A.

Cromity first challenges the district court's application of § 2K2.1(b)(6)(B).  Because the district court didn't err, Cromity's claim falls short.

## 1.

A defendant receives a four-point enhancement if he "used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  A "felony offense" is a federal, state, or local offense that's punishable by more than a year in prison, even if it were never charged.  *Id*. § 2K2.1(b)(6)(B) cmt. n.14(C).  And using the firearm or ammunition "in connection" with another offense means that "the firearm or ammunition facilitated . . . another felony offense."  *Id.* § 2K2.1(b)(6)(B), cmt. n.14(A).  In other words, the possession of a firearm or ammunition can't be "merely coincidental."  *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001).  Instead, the government must establish that there's a nexus between the firearm and the felony.  *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007).

When looking at a court's application of § 2K2.1(b)(6)(B), we "review the district court's factual findings for clear error, and accord 'due deference' to the district court's determination that the firearm was used or possessed 'in connection with' the other felony."  *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011) (citation omitted).

2.

The district court correctly found that Cromity used or possessed his ammunition in connection to his felony offenses. Cromity's decision to shoot could have amounted to two Ohio felonies: felonious assault and discharging a firearm over a public road or highway. And the ammunition played a key role in both offenses—Cromity wasn't firing blanks. Thus, the court correctly applied § 2K2.1(b)(6)(B).

Cromity responds that he was acting in self-defense, and thus didn't commit a felony at all. He asserts the car's driver pointed what Cromity perceived to be a gun at him. Therefore, says Cromity, he believed he was in imminent danger of death or great bodily harm, and could return fire. Cromity also notes that one witness said the car driver also fired a gun during the incident.

Cromity's arguments require looking at Ohio's self-defense regime. To make out a self-defense claim under Ohio law, a plaintiff must make three showings. *Ohio v. Jackson*, 490 N.E.2d 893, 896–97 (Ohio 1986) (per curiam). First, he must prove he wasn't at fault in starting the incident. *Id*. at 896. Second, he must show that he had a "bona fide" belief that he faced imminent danger of death or great bodily harm and that his only way to escape was using force. *Id.* at 896–97. Third, he must demonstrate he violated no duty to retreat or avoid the danger. *Id.* at 897. If a defendant fails to prove any element, then he didn't act in self-defense.

Cromity can't meet two elements of a self-defense claim. The district court found that Cromity started the incident when he swore at the car's driver. So he was at fault for instigating the incident. And Cromity also didn't face imminent death or danger when he opened fire. Why? Cromity didn't shoot until the car was driving away, meaning he used deadly force without a reasonable fear his life was in danger. So Cromity can't satisfy either the first or second element of a valid self-defense claim.

Cromity's rebuttals don't pass muster. For one, he says he didn't start the incident. But he did—when cut off, Cromity took an everyday situation and risked turning it into a violent encounter when he swore at the car. Yet even if we assume that Cromity didn't instigate the encounter, and that it began when the car cut him off, he still loses. Cromity used deadly force without a reasonable fear that his life was in danger. The district court found, after reviewing videos of the incident, that the other driver didn't have a gun. That was a reasonable conclusion. Why? Screenshots show the other driver didn't have a gun in his hand. And Cromity points to no evidence showing he did. Indeed, Cromity states only that the other driver "pointed" at him and that he "perceived" that pointing to be a gun. What's more, the district court also found that Cromity shot only as the car drove away and that bystanders reacted only to Cromity's gunshots (and not to any shots supposedly fired by the driver of the car). Cromity doesn't contest these findings, and our review of the record reveals no error committed by the district court, much less clear error. Thus, the government presented sufficient evidence showing Cromity wasn't engaged in self-defense.

Therefore, Cromity's challenge to the district court's application of § 2K2.1(b)(6)(B) fails.

B.

Cromity next challenges the district court's application of § 3C1.1. His arguments about this provision also fall short.

1.

The § 3C1.1 enhancement punishes offenders who destroy evidence. It applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The provision applies to "destroying or concealing or directing

or procuring another person to destroy or conceal evidence that is material to an official investigation." U.S.S.G. § 3C1.1 cmt. n.4(D). The government must prove obstruction by a preponderance of the evidence, and the court must indicate what specific facts it considered in reaching its conclusion. *United States v. Range*, 982 F.2d 196, 198 (6th Cir. 1992).

While this court has "sent mixed messages" about whether we defer to a district court's application of § 3C1.1 or apply de novo review, Cromity's claim fails under any standard. *United States v. Thomas*, 933 F.3d 605, 608–09 (6th Cir. 2019).

2.

The district court correctly applied § 3C1.1. Cromity confessed that he melted the firearm that he used in the shooting. Destruction of evidence is textbook obstruction of justice. The gun was material evidence: the weapon appeared in the video and could have matched the bullet casings that the police recovered. By destroying the gun, Cromity made that match impossible. Thus, the district court correctly found that when Cromity knowingly destroyed evidence, he obstructed justice. U.S.S.G. § 3C1.1 cmt. n.4; *accord United States v. Boyd*, 312 F.3d 213, 217 (6th Cir. 2002).

Cromity's arguments to the contrary fail. First, he claims that he didn't have the means to melt the gun. In support of this proposition, Cromity says that even his lawyer didn't believe that he melted the gun. But his attorney's belief is irrelevant; Cromity told authorities that he had tools that could melt a gun and that he did in fact melt the weapon.

Cromity's second argument also falls short. He says that if he did melt the gun, he didn't do so to obstruct justice. But that's implausible. What other reason could Cromity have had to melt his gun during the twelve-day period between the shooting and his arrest? After all, a video

of Cromity's shooting aired on television shortly after the incident.  Thus, the district court rightly concluded that Cromity knowingly obstructed justice by a preponderance of the evidence.

All told, the district court correctly applied § 3C1.1.

*       *       *

Because Cromity's claims fail, we affirm.