NOT RECOMMENDED FOR PUBLICATION
FILE NAME: 25A0056N.06

Case No. 24-5389

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Jan 31, 2025<br>KELLY L. STEPHENS, Clerk |

UNITED STATES of AMERICA,

    Plaintiff-Appellee,

        v.

FELIX DEWBERRY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

OPINION

Before: BATCHELDER, MOORE, and BUSH, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court in which BUSH, J., concurred. MOORE, J. (pp. 6–11), delivered a separate dissenting opinion.

**ALICE M. BATCHELDER, Circuit Judge.** The defendant appeals his within-guidelines sentence for the unlawful possession of a machine gun. We AFFIRM.

**I.**

After a gang shootout on the highway, in which his friend was shot and killed, Felix Dewberry called 911. Dewberry was a passenger in a car, and his friend, Courtney Brown, was the driver. Dewberry was on judicial diversion, which meant that he could not have a firearm, per 18 U.S.C. § 922(n). So, before the police arrived, Dewberry threw his and Brown's two guns into the nearby woods to avoid their detection by law enforcement. One of the guns had an extended magazine and an auto switch, making it a machine gun under 26 U.S.C. § 5845(b). That National Firearms Act considers any part designed and intended solely and exclusively—or a combination of parts designed and intended—for use in converting a weapon into a machinegun to be a machinegun. § 5845(b). When the police arrived, they discovered that Dewberry had 36.2 grams

of marijuana in his pocket—a felony amount. The marijuana was not packaged for sale. Nor did Dewberry have drug paraphernalia or a large volume of cash that would be typical of a drug trafficker. But the police did find the two discarded firearms in the woods.

Three months later, a grand jury indicted Dewberry for possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and the court issued an arrest warrant. Two months after that, the police arrested Dewberry in the bedroom of a friend's apartment, as Dewberry was attempting to flee out the window. Upon his arrest, the police found a loaded handgun (hereinafter the "third gun") and 552.16 grams of marijuana, together in the room with him.

Dewberry entered a guilty plea and proceeded to sentencing. Under the U.S. Sentencing Guidelines, the base offense level was 20, U.S.S.G. § 2K2.1(a)(4)(B), plus two levels because Dewberry had three firearms, § 2K2.1(b)(1)(A), plus four levels because the firearms were connected to felony controlled-substance offenses, § 2K2.1(b)(6)(B), and minus three levels for acceptance of responsibility, § 3E1.1(b), yielding a total offense level of 23. Based on a criminal history category of I, the advisory range was 46 to 57 months in prison.

Dewberry argued that his possession of the third gun was not relevant conduct because the two incidents were dissimilar and separated by several months; and that the amount of marijuana he possessed at the shootout (36.2 grams) was for personal use, not distribution, so that was not a controlled-substance offense. The district court disagreed, finding that the two incidents (shootout and arrest) were similar, in that both involved Dewberry's possessing firearms and felony amounts of marijuana. He was also aware that his conduct was unlawful, as shown by his hiding the guns in the first instance and his attempt to flee out the window in the second. Dewberry sought a downward variance based on his efforts at rehabilitation and his status as a single father raising four children. The court could not depart based on his family circumstances, U.S.S.G. § 5H1.6,

2

but during its assessment of the 18 U.S.C. § 3553 factors, the court referred to Dewberry's care for his children as a commendable sign of personal responsibility. The court imposed a 46-month sentence.

Dewberry appeals, claiming that his sentence is unreasonable.

## II.

"A sentence is procedurally unreasonable if, among other things, the district court improperly calculates the Guidelines range . . . ." *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022) (quotation marks, editorial marks, and citations omitted). In this appeal, Dewberry argues that the district court miscalculated the range in two ways. He argues that the court erred in its "relevant conduct" determination, which we review de novo. *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018). And he argues that the court erred in finding a "connection with another felony offense," which is a fact determination that we review for clear error, giving the district court's finding "due deference." *United States v. Mukes*, 980 F.3d 526, 533 (6th Cir. 2020).

"A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Axline*, 93 F.4th 1002, 1008 (6th Cir. 2024). On a claim that a sentence is substantively unreasonable, our review is for an abuse of discretion. *United States v. Whitson*, 77 F.4th 452, 462 (6th Cir. 2023). Dewberry argues that the district court failed to consider his family responsibilities because it mistakenly thought that the Guidelines forbade it from considering that as a factor.

## A.

Dewberry argues that the district court erred by finding that his possession of the third gun in the room where he was arrested was relevant conduct for purposes of applying U.S.S.G.

§ 2K2.1(b)(1)(A), because the two incidents were dissimilar. While both incidents involved firearms and marijuana, they were not otherwise related in any way—they did not have common locations, victims, accomplices, purpose, or modus operandi, and they happened months apart.

For firearm offenses, "relevant conduct" includes—among other things—acts that were part of "the same course of conduct," U.S.S.G. § 1B1.3(a)(2), meaning "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of . . . [an] ongoing series of offenses," § 1B1.3 cmt. n.5(B)(ii). In both incidents, Dewberry possessed a loaded firearm and a felony amount of marijuana while on judicial diversion. The two incidents are sufficiently similar to make the offenses at the arrest relevant to the shootout.

**B.**

Dewberry argues that the district court erred by finding that he possessed the first two guns at the shootout in connection with another felony offense (namely drug trafficking) for purposes of applying U.S.S.G. § 2K2.1(b)(6)(B), because at the shootout, he had—in his mind—only a relatively small amount of marijuana and no paraphernalia or cash. But this allegedly "small amount" was nonetheless a felony amount of marijuana, sufficient to justify a suspicion of drug trafficking and the implication that Dewberry had a loaded gun (in fact, a machine gun) with him in order to protect that endeavor, i.e., in connection with that felony offense.

**C.**

Dewberry argues that the district court erred by disregarding his family responsibilities, because U.S.S.G. § 5H1.6 addresses downward departure, not variance. The government points out that Dewberry did not raise this specific argument at sentencing; he raises it here for the first time on appeal, which is improper. And, although it refused to grant his requested downward variance, the court did consider his family responsibilities when selecting Dewberry's sentence.

The district court fully discussed the § 3553 factors in deciding on Dewberry's sentence. While the court did say that U.S.S.G. § 5H kept it from departing downward based on Dewberry's family responsibility, the court favorably acknowledged that behavior anyway, which suggests that it might have been a factor in the court's selecting the low-end sentence. Either way, Dewberry has not shown—and cannot show—that a more express consideration of his family responsibility would have led to a lower (below guidelines range) sentence, and therefore, he cannot show that his (low-end) within guidelines sentence is substantively unreasonable.

### III.

For the forgoing reasons, we AFFIRM the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Felix Dewberry appeals his 46-month sentence, imposed following his conviction for possessing a machine gun, as both procedurally and substantively unreasonable. The district court improperly applied two sentencing enhancements—increasing Dewberry's offense level by six levels in total—and failed to consider a pertinent 18 U.S.C. § 3553(a) factor in determining the appropriate sentence. Dewberry's sentence was thus procedurally unreasonable. I respectfully dissent.

## I. DISCUSSION

### A. The U.S.S.G. § 2K2.1(b)(1)(A) Enhancement

The majority concludes that the district court properly found the third firearm to be "relevant conduct" for the purposes of applying a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A). That conclusion is inconsistent with the facts of Dewberry's case and our caselaw.

"In analyzing the connection between offenses, we consider three factors: 'the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.'" *United States v. Amerson*, 886 F.3d 568, 574 (6th Cir. 2018) (quoting U.S.S.G. § 1B1.3 cmt. n.5(B)(ii)). "When one of [these] factors is absent, a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii).

Both the regularity and temporality factors are missing in this case. The government concedes that "regularity was lacking in this case." Appellee Br. at 12; *see United States v. Hill*, 79 F.3d 1477, 1484 (6th Cir. 1996) ("Regularity is completely absent" where "the government proved only one prior offense."). And at Dewberry's sentencing hearing, the district court found that, because more than five months separated the two events, the temporality factor weighed in Dewberry's favor. R. 74 (Sent'g Tr. at 16) (Page ID #248); *see, e.g.*, *United States v. Bowens*, 938

6

F.3d 790, 798 (6th Cir. 2019) (holding that possession of a firearm four months after charged conduct involving two firearms was not relevant conduct); *Amerson*, 886 F.3d at 575 (holding that a gap of three and a half months between two illegal firearm possessions was "not strong enough timing evidence to overcome a complete lack of regularity"). The similarity factor is therefore the decisive factor in this case. In such cases, "[i]n looking for stronger evidence of similarity, we may consider whether the conduct involves common victims, common offenders, a common purpose, or a common modus operandi." *Amerson*, 886 F.3d at 574.

Here, both events involved at least one firearm, some amount of marijuana, and an awareness of wrongdoing. That is where the similarities end. In the first instance, Dewberry was in possession of a Ruger pistol and a Glock machine gun; in the second, a Glock handgun. In the first instance, Dewberry had 36.2 grams of marijuana on his person, arguably for personal use; in the second, he had over 500 grams of marijuana. And in the first instance, Dewberry was present at a violent shootout on the highway; in the second, he was sleeping in the bedroom of a friend's apartment when police arrived to arrest him. I would therefore hold that Dewberry's possession of the third firearm was not part of the same course of conduct as the conduct with which he was charged.

Such a holding would be consistent with our precedent. *See Bowens*, 938 F.3d at 798 (holding that the defendant's "possession of the Sig Sauer [handgun] should not have counted as relevant conduct" because "leaving a Sig Sauer under a pillow at his mother's house in January 2017 was not part of the same scheme or plan as possession of the two charged firearms four months later."); *Amerson*, 886 F.3d at 578 (holding that, where "the government proved only a single additional non-contemporaneous instance of illegal firearm possession and only minimal similarity between the two possessions, this was insufficient evidence to support a course-of-

conduct finding."); *Hill*, 79 F.3d at 1484–85 (holding that, where two isolated drug transactions involved the same drug but "the quantities involved in each deal differ[ed] substantially," "the district court erred by finding that the [first] drug transaction constitute[d] 'relevant conduct.'"). To ensure consistency with this caselaw, I would reverse the district court's application of the two-level enhancement.

## B.  The U.S.S.G. § 2K2.1(b)(6)(B) Enhancement

The majority also upholds the district court's application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) to Dewberry's sentence because, it concludes, Dewberry's possession of a "felony amount" of marijuana was sufficient to imply that the firearms in Dewberry's possession were being used or possessed in connection with a drug-trafficking enterprise.  But this conclusion ignores the relevant legal test.

A defendant's possession of a firearm and drugs at the same time is insufficient, on its own, to support the application of § 2K2.1(b)(6)(B).  *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009).  Instead, "a sufficient connection is established 'if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction.'"  *Id.* (quoting *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001)).  In other words, the enhancement applies only "if the firearm had some emboldening role in [a] defendant's felonious conduct."  *Id.* (quoting *Ennenga*, 263 F.3d at 503).

Having already concluded that Dewberry's conduct at the time of his arrest should not be considered relevant conduct, in determining whether Dewberry possessed firearms in furtherance of another felony offense, I would look only to the circumstances surrounding Dewberry's possession of 36.2 grams of marijuana at the shootout.  In looking to that conduct, it appears that

the district court concluded that Dewberry's possession of a "felony amount"—under Tennessee law—of marijuana, along with the early hour at which the shootout occurred, was sufficient to show that his "possession of the firearm was—or ha[d] the potential of facilitating another felony offense," that is, possession with the intent to distribute marijuana. R. 74 (Sent'g Tr. at 37) (Page ID #269); *see also id.* at 35 (Page ID #267) (the district court stating that Dewberry's possession of 36.2 grams of marijuana at the shootout "actually would be sufficient to allow the additional four points because it's a felony quantity of marijuana").

But the district court failed to contemplate whether Dewberry's possession of 36.2 grams of marijuana could reasonably be considered drug trafficking. In fact, neither the government nor the district court mentioned the term "drug trafficking" at all during the discussion of this enhancement at Dewberry's sentencing. And the government failed to present evidence at sentencing that the marijuana on Dewberry's person—a relatively small amount, and certainly not a cache valuable enough to warrant the protection of a machine gun—was the impetus for his possession of the firearms. Nor did the government present evidence that Dewberry was engaged in drug trafficking at the shootout, such as evidence of any drug transaction, paraphernalia indicating sale, or individual packaging of the marijuana found on his person. And the government did not offer any evidence to rebut the notion that Dewberry had the firearms for his personal protection given the violent circumstances of the shootout. *See, e.g.*, *United States v. Shields*, 664 F.3d 1040, 1045 (6th Cir. 2011) (holding that the district court erred in applying § 2K2.1(b)(6)(B) where the government failed to show that the defendant was trafficking drugs; failed to show that the small quantity of marijuana on the defendant's person was intended for sale and not personal use; and failed to show that the firearm on the defendant's person was being used to facilitate trafficking activity instead of for personal protection). I would therefore hold that the government

9

failed to carry its burden of demonstrating that the firearms thrown into the woods were used to embolden an underlying felony offense and would reverse the district court's application of the four-level enhancement.

## C. Dewberry's Family Circumstances

Finally, the majority endorses the district court's erroneous conclusion that it was barred from considering Dewberry's familial circumstances in determining the appropriate sentence, because the district court nevertheless "acknowledged" Dewberry's personal circumstances when it stated that his care of his children demonstrated "a level of responsibility that we can be aware of, that we should be aware of."  R. 74 (Sent'g Tr. at 86) (Page ID #318).  But in stating that U.S.S.G. § 5H1.6 bars district courts from *ever* considering a defendant's familial circumstances—when that provision restricts district courts only from considering such circumstances in granting a departure and does not apply to variances—the district court erroneously failed to examine a pertinent § 3553(a) factor that it should have considered in determining Dewberry's sentence.

We review challenges to a sentence's substantive reasonableness "under a deferential abuse of discretion standard, for reasonableness[.]"  *United States v. Herrera*-Zuniga, 571 F.3d 568, 581 (6th Cir. 2009) (quoting *United States v. Bolds*, 511 F.3d 568, 587 (6th Cir. 2007)).  I would not decide whether the district court abused its discretion here, however, because I would conclude that Dewberry's sentence was procedurally unreasonable as explained in Parts I.A. and I.B. *supra*.  "When reviewing a sentence's reasonableness, we typically first address the procedural reasonableness of a sentence and do not analyze its substantive reasonableness unless that sentence is 'procedurally sound.'"  *United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017) (quoting *Bolds*, 511 F.3d at 581).  Here, because I would find that Dewberry's sentence was not procedurally sound,

10

I would not analyze its substantive reasonableness. *See United States v. Thomas-Mathews*, 81 F.4th 530, 541 (6th Cir. 2023).

## II. CONCLUSION

In short, I would reverse Dewberry's sentence as procedurally unreasonable. I respectfully dissent.